**Dorenda MATTHEWS**

v.

**Darryl FREEDMAN and McCormick, Taylor & Co., Inc.**

**Civ. A. No. 88–3127.**

United States District Court, E.D. Pennsylvania.

Aug. 17, 1989.

Steven M. Kramer, Steven M. Kramer & Associates, Philadelphia, Pa., for plaintiff.

Richard C. Biedrzycki, Phillips and Phelan, Philadelphia, Pa., for Darryl Freedman et al.

---

## OPINION

GAWTHROP, District Judge.

On February 22, 1989, I dismissed all of plaintiff's claims in this employment discrimination suit. Defendants have now filed a Motion for the Award of Attorneys' Fees and Costs under 42 U.S.C. § 2000e–5(k), 28 U.S.C. § 1927, and Rule 11 of the Federal Rules of Civil Procedure. Upon the following reasoning, the motion will be granted, and attorneys' fees and costs will be assessed, but against plaintiff's attorney, Steven M. Kramer, Esquire, only, and not, either directly or indirectly, against plaintiff herself. In addition, attorney Kramer will be referred to the Disciplinary Board of the Supreme Court of Pennsylvania for such further proceedings as the Board may deem appropriate.

## BACKGROUND

Plaintiff, a black woman, filed the complaint commencing this action on April 14, 1988, alleging that her former employer, defendant McCormick, Taylor & Co., Inc.,

acting through plaintiff's immediate supervisor, defendant Darryl Freedman, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* by discriminating against her on the basis of sex and race. Plaintiff also asserted independent claims directly under the Thirteenth and Fourteenth Amendments, as well as a variety of pendent state law claims.

On June 10, 1988, defendants filed a motion to dismiss the complaint in its entirety for failure to state any claims upon which relief could be granted. With respect to plaintiff's Title VII claims, defendants asserted that plaintiff had (1) failed to file her administrative charge with the Equal Employment Opportunity Commission ("EEOC") within the requisite statutory time period, and (2) failed to initiate her Title VII lawsuit within 90 days after receiving her right-to-sue letter from the EEOC, as required by 42 U.S.C. § 2000e–5(f)(1). With respect to the constitutional claims, defendants argued that plaintiff had no cause of action under the Fourteenth Amendment, there being no allegation of state action, nor under the Thirteenth Amendment, there being no allegation of involuntary servitude or slavery.

Before filing their motion, however, defendants' counsel had tried on several occasions, by letter and by telephone, to obtain a voluntary dismissal from plaintiff. For example, on May 18, 1988, defendants' counsel sent plaintiff's counsel, attorney Kramer, a letter which outlined the above-mentioned arguments, and which advised Kramer that unless the lawsuit was not withdrawn defendants would file both a motion to dismiss and a Rule 11 motion. Letter from defendants' counsel to Steven Kramer, dated 5/18/88; *see also* Letter from defendants' counsel to Kramer, dated 5/5/88. Attorney Kramer declined to dismiss the suit, and defendants responded by filing their motion to dismiss.

One month after it was due, Mr. Kramer filed plaintiff's memorandum in opposition to the motion to dismiss. [A copy of plaintiff's memorandum is attached as Appendix A to this opinion]. This memorandum, consisting of less than two pages, addressed none of defendants' contentions concerning the untimeliness of plaintiff's Title VII claims; nor did it rebut defendants' contention that the Fourteenth Amendment claims should be dismissed for lack of state action. Instead, plaintiff's counsel chose to address but one issue: that of the Thirteenth Amendment. Argued Mr. Kramer: "[i]t has long been established that a victim of racial discrimination has a claim under the Thirteenth Amendment...." Plaintiff's Memorandum re motion to dismiss. In support of this "long-established" proposition, he cited one case, *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)—an opinion of the Supreme Court which stands for the inapposite proposition that a plaintiff may pursue Title VII claims simultaneously with independent claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981.[1]

On August 25, 1988, this court, upon its own initiative, heard oral argument on defendants' motion to dismiss. It was there uncontested that the EEOC had issued the right-to-sue letter on August 12, 1987; it was also uncontested that attorney Kramer had asked the EEOC to send the letter directly to his offices. Attorney Kramer, however, offered no explanation regarding his failure to file his client's Title VII claims until April 14, 1988—eight (8) months after the issuance of the right-to-sue letter and five (5) months after the expiration of the ninety (90) day filing period under § 2000e–5(f)(1). Instead, attorney Kramer professed his inability to advise the court of the date when he received the letter from the EEOC. I therefore orally, from the bench, directed attorney Kramer forthwith to submit a letter to the court setting forth the date of his receipt of the right-to-sue letter.

After more than a month had passed without receiving any response to the court's request, on September 28, 1988, I signed an order directing attorney Kramer to provide a notarized affidavit within seven (7) days stating when he received the right-to-sue letter. The order also warned

---

**1.** Plaintiff's complaint did not include any claims brought under 42 U.S.C. § 1981.

that I would consider his refusal to comply with the order to be grounds for holding him in contempt of court. Thirty (30) days later, on October 28, 1988, attorney Kramer filed his affidavit, wherein he stated that he "most likely received the Notice of Right to Sue Letter, dated August 12, 1987, within a month of its date." Kramer Affidavit, dated 10/27/88.

Accordingly, absent any rebuttal by plaintiff or her attorney as to the untimeliness of the filing of plaintiff's Title VII action, as well as the untimeliness of the filing of her administrative charge with the EEOC, on February 22, 1989, I dismissed her Title VII claims; finding no merit in her federal constitutional claims, I dismissed these as well. *See Matthews v. Freedman*, C.A. No. 88–3127, Order dated February 22, 1989 (E.D.Pa.). Lastly, I dismissed her remaining pendent state law claims for lack of jurisdiction. *Id.* Defendants, having prevailed on their motion to dismiss, have now moved for counsel fees and costs.

## DISCUSSION

Defendants contend that they are entitled to an award of attorneys' fees and costs under 28 U.S.C. § 1927, 42 U.S.C. § 2000e–5(k), and Rule 11 of the Federal Rules of Civil Procedure, asserting that plaintiff's federal claims lacked colorable merit and that plaintiff's counsel never offered any reasonable factual or legal grounds for denial of defendants' motion to dismiss said claims.

### A. RULE 11

By signing a pleading, motion, or other filing, under Rule 11 an attorney certifies

> that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unneces-

sary delay or needless increase in the cost of litigation ...

Fed.R.Civ.P. 11. The Rule further provides that if a pleading, motion, or other paper is signed in violation of the rule, the court

> shall impose upon the person who signed it ... an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing ... including a reasonable attorney's fee.

*Id.* The purpose of the rule is simple: to discourage pleadings that are frivolous, legally unreasonable, or without factual foundation. *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 157 (3d Cir.1986); *Napier v. Thirty or More Unidentified Agents*, 855 F.2d 1080, 1090–91 (3d Cir.1988).

The Third Circuit applies an objective test of "reasonableness under the circumstances" to determine whether a pleading or paper has been filed in contravention of Rule 11. *Napier*, 855 F.2d at 1091; *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3d Cir.1988). Four factors must be considered in determining the reasonableness of an attorney's pre-filing inquiry:

> (1) the amount of time available to the signer for conducting relevant factual and legal investigation;
>
> (2) the necessity for reliance on a client for underlying factual information;
>
> (3) whether the case was referred to the signer by another member of the bar; and
>
> (4) the plausibility of the legal position advocated.

*Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95 (3d Cir.1988); Fed.R.Civ.P. 11, Notes of the Advisory Committee. In addition, when evaluating these factors, the Third Circuit has cautioned that district courts should avoid using the wisdom of hindsight and should test the signer's conduct by asking what was reasonable to believe at the time the pleading was submitted. *Teamsters Local*, 841 F.2d at 68. I will consider the *Lingle* criteria seriatim.

### 1. The First *Lingle* Factor: Available Time

As for the first factor, I conclude that attorney Kramer had ample time to investigate the pertinent facts and law. For example, at least four months before he filed the complaint, attorney Kramer knew, or should have known, that it was no longer possible to file the complaint within the statutorily mandated ninety (90) day period.

### 2. The Second *Lingle* Factor: Reliance on Client

As for the second factor—need to rely on the client to learn the underlying facts—that was not here present, since the EEOC sent the right-to-sue letter not to, or through, the client, but directly to attorney Kramer. Indeed, all that Mr. Kramer had to do was read the right-to-sue letter (and, if that was not satisfactory to him, conduct the most rudimentary legal research) to learn that a Title VII action not filed within ninety days after receipt of the right-to-sue letter is time-barred. *See Seredinski v. Clifton Precision Products Co.*, 776 F.2d 56, 61 (3rd Cir.1985); *Mosel v. Hills Department Store*, 789 F.2d 251, 253 at n. 2 (3rd Cir.1986) (per curiam) (affirming dismissal of complaint filed on the ninety-first day after receipt of notice of right-to-sue letter).

### 3. The Third *Lingle* Factor: Referred Cases

The third factor—whether the attorney took the case on referral—is not here relevant.

### 4. The Fourth *Lingle* Factor: The Legal Plausibility of Plaintiff's Claims

Thus, the only remaining Rule 11 issue is the extent to which the claims proffered by attorney Kramer in the complaint were legally plausible. I will discuss the plausibility of each claim separately.

#### a. The Title VII Claims

■ The filing of a Title VII claim clearly precluded by the applicable statute of limitations is legally frivolous, is not well grounded in fact, and is without factual or legal justification; the filing of such a claim cannot, therefore, be characterized as "reasonable under the circumstances." *Napier v. Thirty or More Unidentified Agents*, 855 F.2d at 1091; *Ruffin v. ITT Continental Baking Co.*, 636 F.Supp. 857, 859–60 (N.D.Miss.1986) (imposing Rule 11 sanctions where Title VII suit was not filed until a year after receipt of right-to-sue letter); *see also Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750 (7th Cir.1988) (reversing district court's refusal to invoke Rule 11 and imposing sanctions for filing suit that was clearly time-barred); *Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281 (2d Cir.1986) (same).

■ In the response to the motion for attorney's fees, however, plaintiff's counsel now asserts, for the first time, that the Title VII claim was timely filed: "[O]n appeal [of the February 22 order of dismissal], plaintiff shall present an equitable tolling argument.... All of the factors supporting equitable tolling are present here (lack of surprise, absence of loss of evidence or witnesses, etc.)." Plaintiff's Brief in Opposition to Award of Counsel Fees [attached as Appendix B to this opinion]. Thus, plaintiff's counsel contends, in essence, that he should be permitted to use an argument that was not raised before the entry of final judgment to show, *nunc pro tunc*, that his client actually could have had a valid claim—thereby avoiding the imposition of sanctions. I disagree.

Counsel's failure to raise an equitable tolling defense before the district court's entry of final judgment renders this newly asserted defense waived for purposes of avoiding an award of sanctions. As another district court has noted in a case that bears a striking resemblance to the one at bar:

> [Plaintiff's counsel's argument that his client's Title VII claim is] subject to waiver, estoppel and equitable tolling ... was never mentioned in plaintiff's initial brief [in opposition to dismissal]. *Plaintiff's] [counsel] may not now rely on such post hoc contentions to mask the fact that his [client's] Title VII claim, as pleaded and supported in his initial*

*brief, is clearly foreclosed by existing law.* The court reaffirms its award of [Rule 11] sanctions [against plaintiff's counsel] with respect to this claim. *Carlos de la Torres v. Gianni Furniture Co.,* C.A. No. 85–C–9924, slip opinion, 1986 WL 6407 [available on LEXIS] (N.D.Ill., June 4, 1986). *See also Morris v. Jenkins,* 819 F.2d 678, 681 (7th Cir.1987) (plaintiff's failure to raise equitable tolling defense in opposition to defendant's motion to dismiss constitutes waiver of issue); *U.S. v. Allen L. Wright Development Corp.,* 667 F.Supp. 1218 (N.D.Ill.1987) (party's after-the-fact justifications for its actions are irrelevant as to whether to impose sanctions under Rule 11); *cf. Wetzel v. Liberty Mutual Insurance Company,* 511 F.2d 199, 208 (3d Cir.1975) ("[I]t is clear that an issue not raised at the trial and then presented for the first time on the appeal will not be considered by this court"), *vacated on other grounds* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435; *All Hawaii Tours v. Polynesian Cultural Center,* 116 F.R.D. 645 (D.Hawaii 1987) (litigants are not permitted to assert new arguments seriatim, and failure to raise issues in opposition to a dispositive motion operates as a waiver).

Furthermore, even though attorney Kramer opines that his client will present a valid tolling argument on appeal, he fails to cite a single fact or legal authority to buttress his bald assertion that the statute of limitations was tolled. Kramer's tolling arguments, for the purposes of the instant motion for sanctions, will therefore also be deemed waived for lack of substantiation. *See Morris v. Jenkins,* 819 F.2d at 681.

b. The Fourteenth Amendment Claim

I also find that, as there were no allegations of state action, there was never any reasonable basis for bringing a Fourteenth Amendment claim. *See Atta v. Sun Co., Inc.,* 596 F.Supp. 103 (E.D.Pa.1984) (collecting cases). Indeed, plaintiff's brief makes no attempt to rebut defendant's contention that the Fourteenth Amendment claims were baseless.

c. The Thirteenth Amendment Claim

■ Under controlling Third Circuit precedent, I have no difficulty in concluding that the filing of plaintiff's Title VII claims was legally frivolous, and, as noted above, plaintiff's counsel has conceded that the Fourteenth Amendment claim is meritless. The issue of whether plaintiff's Thirteenth Amendment claim is legally plausible under *Lingle,* however, has not been conceded by plaintiff's counsel, and, as plaintiff's counsel correctly observes, there is no controlling Third Circuit precedent which definitively holds that there is no independent cause of action under the Thirteenth Amendment for racially motivated employment discrimination.

In this circuit, the Court of Appeals has construed the "legal plausibility" test strictly. For example, in *Teamsters Local,* 841 F.2d at 70, the court overturned the district court's imposition of sanctions and held that plaintiff's claim, while novel and unsuccessful, was not "plainly unreasonable." *See also Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988) (Rule 11 sanctions are reserved for motions or claims that are "patently unmeritorious or frivolous"). In *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 482 (3d Cir.1987), the Third Circuit emphasized that Rule 11 "[targets] abuse—the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." Instead, the court cautioned that the Rule should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories—and that the Rule must not "be interpreted to inhibit imaginative legal or factual approaches to applicable law or unduly harness good faith calls for reconsideration of settled doctrine." *Gaiardo,* 835 F.2d at 483; *Lingle,* 847 F.2d at 94. However, implicit in these holdings is a recognition that there will be cases when adventuresome legal theories are irresponsible and frivolous; otherwise Rule 11 would be rendered meaningless.

At bar, even under the stringent standards imposed by the Third Circuit, I conclude that plaintiff's Thirteenth Amendment claim is legally frivolous. However, because I am concerned lest this opinion have a chilling effect on creative and en-

thusiastic advocacy in support of novel constitutional claims, *cf. Lingle*, 847 F.2d at 94, I will set forth with specificity the factors which I have considered in reaching this conclusion.

In deciding whether plaintiff's Thirteenth Amendment claim is legally implausible and plainly unreasonable, as the Third Circuit requires, I find the analysis of Professor Edward Cavanaugh to be particularly useful. *See* E.D. Cavanaugh, *Developing Standards under Amended Rule 11 of the Federal Rules of Civil Procedure*, 14 Hofstra L.Rev. 499 (1986). As a recent study published by the Federal Judicial Center has noted, *see* T.E. Willging, The Rule 11 Sanctioning Process (Federal Judicial Center 1988), terms such as "plausible," "frivolous," and "arguable" are subject to different interpretations; Prof. Cavanaugh has therefore attempted to offer more concrete guidelines for determining whether an attorney's argument satisfies Rule 11's "well-grounded in law" requirement. Cavanaugh at 528–29. As the Federal Judicial Center study also observes, efforts such as Cavanaugh's to create better objective standards for imposition of sanctions has the potential of providing detailed guidance to both bar and bench, and should narrow the zone of discretion under Rule 11 and reduce the potential for chilling effects. Willging at 49–50 (citing Cavanaugh). Moreover, because Prof. Cavanaugh's analysis also discusses useful distinctions between attorney conduct that is "presumptively unreasonable" and that which is "clearly unreasonable," I find his approach particular valuable in determining whether attorney Kramer's conduct in pressing a Thirteenth Amendment claim is "plainly unreasonable" as required under Third Circuit precedents.

On Cavanaugh's spectrum, a legal argument is "clearly reasonable" in the following situations:

— argument is based on plain meaning of statutes or Supreme Court decisions;

— argument is based on caselaw from within circuit;

— circuit caselaw is unsettled, but caselaw from another circuit or district supports argument;

— circuit caselaw is contrary to argument, but another circuit supports it.

— plausible argument in case of first impression;

— argument counter to established caselaw, but compelling facts or values suggest re-examination of settled precedent; or

— settled precedent is factually distinguishable, and argument meets one of the other standards above.

*Id.* at 543–44. *See also* Willging at 43–50.

In the middle, "gray area" of his spectrum, Cavanaugh classifies legal arguments according to rebuttable presumptions. An argument is "presumptively reasonable" if it is based on

— novel (plausible) theories based on analogies to unrelated areas of law; or

— plausible theories in a complicated area of the law.

*Id.* at 545–46. By comparison, an argument is "presumptively unreasonable" if it is founded on

— farfetched analogies that imply an improper purpose; or

— misrepresentations of governing law that suggest an intention to mislead the court.

*Id.* at 546.

Lastly, Cavanaugh classifies the following types of argument as "clearly unreasonable":

— fatal, irremediable defect on face of pleading;

— *settled law opposes argument and counsel does not confront or attempt to distinguish adverse authority;* or

— *argument consists of dubious legal propositions unsupported by legal research.*

*Id.* at 538, 544–45. Cavanaugh suggests that this type of conduct is not merely suspect: instead, it is conclusively sanctionable under Rule 11 absent a "clear and convincing" justification for the pleader's conduct. *Id.* at 538.

Under Prof. Cavanaugh's taxonomy, I note that arguments which involve misuse of legal authorities are classified as "presumptively" unreasonable, but arguments which ignore existing caselaw altogether are considered "conclusively" unreasonable. This distinction, in my view, is both valid and useful. Under Rule 11, if a position is not warranted by existing law, then counsel meets his burden under the rule only if his position is warranted "by a good faith argument for the extension, modification, or reversal of existing law." Fed.R. Civ.P. 11. In applying the "good faith argument" standard there will almost always be some dispute as to whether a particular analogy in support of a position is outlandish, or whether counsel's faulty analysis of a line of cases is pardonable—in other words, there will invariably be room for some disagreement concerning the precise degree to which an argument is plausible or outrageous. However, where an attorney *ignores* an unbroken line of contrary authority, and fails to offer even farflung analogies, cites *no* cases (or only a single, wholly inapposite case) in support of his "argument", and files only conclusory, one-page briefs, that attorney is engaged in empty posturing, not good faith argument. *See U.S. v. Milam*, 855 F.2d 739, 745 (11th Cir.1988) ("good faith" argument for reversal or modification of precedent may be based on legislative history, public policy,

equity, principles of constitutional law, or analogies, but "argument" for reversal based solely on naked assertions warrants Rule 11 sanctions); *see also* Black's Law Dictionary, 5th ed. (defining "argument" as "[a]n effort to establish belief by a course of reasoning."). I agree that such conduct is "conclusively unreasonable" and hence subject to appropriate sanctions under Rule 11. *Cf. Calderon–Ontiveros v. I.N.S.*, 809 F.2d 1050, 1053 (5th Cir.1986) (appeal was frivolous and sanctionable under 28 U.S.C. § 1927 where constitutional claim was utterly without merit and plaintiff's substantive argument occupied just one page and cited no supporting case).

At bar, plaintiff's counsel has now pressed the Thirteenth Amendment claim on this court in two separate briefs, and he has yet to offer a single authority which supports his position. Rather than offer any supporting authorities of his own, Mr. Kramer, like a broken record, simply persists in repeating his assertion that the validity of plaintiff's independent cause of action for racial discrimination and harassment under the Thirteenth Amendment "is not at all free from doubt." Brief in Opposition to Award of Counsel Fees. However, had counsel conducted even the most fleeting review of Thirteenth Amendment caselaw, he would have soon discovered an unbroken line of cases to the contrary.[2]

---

**2.** Courts across the country have uniformly rejected the existence of a Thirteenth Amendment cause of action in the context of employment discrimination. Indeed, one line of cases holds that there are no private causes of action whatsoever under the Amendment other than those which have been created by Congress under section 2 of the Amendment. *See, e.g., Clark v. Universal Builders, Inc.*, 409 F.Supp. 1274, 1279 (N.D.Ill.1976); *Vietnamese Fishermen's Association v. Knights of Ku Klux Klan*, 518 F.Supp. 993, 1012 (S.D.Tex.1981); *Sanders v. A.J. Canfield Co.*, 635 F.Supp. 85 (N.D.Ill.1986) (employment discrimination case); *Westray v. Porthole, Inc.*, 586 F.Supp. 834 (D.C.Md.1984); *Baker v. McDonald's Corp.*, 686 F.Supp. 1474 (S.D.Fla. 1987) (employment discrimination case); *Walton v. Utility Products, Inc.*, 424 F.Supp. 1145 (N.D.Miss 1976) (employment discrimination case); *see also Atta v. Sun Co., Inc.*, 596 F.Supp. 103 (D.C.Pa.1984) (employment discrimination case). Another view, which has been adopted by four judges in this district, suggests that a private action may exist, but only for claims in

which the plaintiff alleges that he was subjugated to a condition of slavery or involuntary servitude. *See Atta v. Sun Co., Inc.*, 596 F.Supp. at 105 (Broderick, J.); *Peterson v. Lehigh Valley District Council*, 453 F.Supp. 735 (D.C.Pa.1978) (Troutman, J.) (employment discrimination case); *Mensah v. Mercy Catholic Medical Center, et al.*, C.A. No. 87–3757, 1988 WL 36351, 1988 U.S.DIST LEXIS 3395 (E.D.Pa., April 11, 1988) (Ludwig, J.) (employment discrimination case); *Davis v. Pepsi–Cola Metropolitan Bottling Co.*, 18 F.E.P. 531 (E.D.Pa.1978) (McGlynn, J.) (employment discrimination case); *see also Family Division Trial Lawyers v. Moultrie*, 725 F.2d 695, 705 (D.C.Cir.1984); *Flood v. Kuhn*, 443 F.2d 264 (2d Cir.1971), *aff'd on other grounds* 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972); *Alma Society Inc. v. Mellon*, 601 F.2d 1225, 1236–38 (2d Cir.1979), *cert denied* 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426; *James v. Family Mart*, 496 F.Supp. 891 (D.C.Ala.1980) (employment discrimination case); *Lopez v. Sears, Roebuck and Co.*, 493 F.Supp. 801 (D.C.Md.1980) (employ-

Although this line of cases contains no controlling decisions by the Court of Appeals for this circuit, the sheer volume of uniformly contrary decisions from other courts, as well as dictum from leading Supreme Court opinions, constituted more than adequate authority to put plaintiff's counsel on notice that his Thirteenth Amendment assertions were not well grounded in law and that sanctions would be in order unless counsel bolstered his assertions with at least a modicum of argument for extension, modification, or reversal of existing law. *See Lieb v. Topstone Indus., Inc.,* 788 F.2d at 157 (to meet reasonable-inquiry-into-existing-law requirement of Rule 11, counsel must conduct a "competent level of legal research to support [his argument]"); *Doering v. Union County Board,* 857 F.2d at 195; *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d at 94; *cf. Cabell v. Petty,* 810 F.2d 463 (4th Cir.1987) (reversing district court's refusal to impose Rule 11 sanctions where "weight of existing law overwhelmingly favored defendants" and where record was "devoid of any factual or legal investigation conducted by plaintiff's counsel ... to formulate a [good faith] argument [for reversal of existing law]"); *see also Sanders v. A.J. Canfield Co.,* 635 F.Supp. 85, 87–88 (N.D. Ill.1986) (imposing Rule 11 sanctions where plaintiff's attorney brought frivolous Thirteenth Amendment claim in an employment discrimination case).

The record, therefore, leads me to conclude that Mr. Kramer failed to make a reasonable inquiry into any of his client's federal claims before filing the complaint. Mr. Kramer's actions in the course of this suit were not, however, limited to filing the complaint, and I find that Mr. Kramer committed two additional violations of Rule 11 when he filed his briefs in Opposition to Defendants' Motion to Dismiss and in Opposition to Defendants' Motion for Attorney's Fees. In both of these briefs, attorney Kramer propounded a Thirteenth Amendment claim without making any attempt to support this claim with an argument for modification, extension, or reversal of existing law. When attorney Kramer filed the first of these two papers, he was in receipt of defendants' brief, which included citations to two relevant Thirteenth Amendment opinions; by this time, Kramer's conduct in filing additional papers in pursuit of this suit could no longer be attributed to good faith errors in judgment or legal research. Either he deliberately refused to conduct relevant legal research before he filed these briefs, or he filed them knowing that they contained frivolous legal assertions. In either case, he was guilty of bad faith.

5. Appropriate Sanctions under Rule 11

◼ In authorizing the imposition of an "appropriate sanction," Rule 11 does not limit the court's choices. *Lieb v. Topstone Industries, Inc.,* 788 F.2d at 157–58; William W Schwarzer, U.S.D.J., *Sanctions under the New Rule 11—A Closer Look,* 104 F.R.D. 181, 205 (1985). Although the most commonly imposed sanction is an award of attorney's fees to the opposing party, S.M.

---

ment discrimination case); *Jordan v. Lewis Grocer Co.,* 467 F.Supp. 113 (D.C.Miss.1979); *Williams v. Yazoo Valley–Minter City Oil Mill, Inc.,* 469 F.Supp. 37 (D.C.Miss.1978); *Davidson v. Yeshiva University,* 555 F.Supp. 75 (D.C.N.Y. 1982) (employment discrimination case); *Rogers v. American Airlines, Inc.,* 527 F.Supp. 229 (D.C.N.Y.1981); *Tucker v. Harley Davidson Motor Co.,* 454 F.Supp. 738 (D.C.Wis.1978); *Walton v. Utility Products, Inc.,* 424 F.Supp. 1145 (D.C. Miss.1976) (employment discrimination case); *Nichelson v. Quaker Oats Co.,* 573 F.Supp. 1209 (D.C.Tenn.1983); *Apperson v. Ampad Corp.,* 641 F.Supp. 747 (N.D.Ill.1986); *cf. Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 439, 88 S.Ct. 2186, 2203, 20 L.Ed.2d 1189 (1968) (holding that the enabling clause of the Thirteenth Amendment empowered Congress to "pass all laws necessary and proper for abolishing all badges and incidents of slavery," but declining to address the question of "[w]hether or not the Amendment itself did any more" than abolish slavery); *Palmer v. Thompson,* 403 U.S. 217, 226–27, 91 S.Ct. 1940, 1945–46, 29 L.Ed.2d 438 (1971) (strongly suggesting that absent legislation passed pursuant to enabling clause of Thirteenth Amendment, courts have power to strike down only actual conditions of slavery or involuntary servitude, whereas power to abolish of "badges and incidents" of slavery is reserved to Congress). At bar, even under the latter, more liberal construction of the Thirteenth Amendment, plaintiff's allegations of racial harassment and discrimination fall conspicuously short of alleging that defendants reduced her to a condition of slavery or involuntary servitude.

Kassin, *An Empirical Study of Rule 11 Sanctions* (Federal Judicial Center 1985) at 36–39, other penalties may include fines, oral or written reprimands, publication of the sanctioning opinion, and/or referral of the matter to the state bar for disciplinary proceedings. Schwarzer at 204. At the extreme end of the sanctions spectrum, the court may even suspend an attorney who violates the Rule from practicing within the relevant federal district for a fixed period of time. *Doering v. Union County Board,* 857 F.2d at 194. In imposing a sanction, however, the court must remember that the primary function of Rule 11 sanctions is deterrence of future misconduct, and the basic principle governing the choice of sanctions is that "the least severe sanctions adequate to serve [this] purpose should be imposed." Schwarzer at 201, *quoted with approval in Doering,* 857 F.2d at 194.

For filing a frivolous lawsuit, I would normally award attorney's fees and costs incurred by defendants in defending the suit and in bringing the Rule 11 motion. *Cf. Lieb v. Topstone Industries, Inc.,* 788 F.2d at 156. As for the filing of the two briefs, this conduct, being in bad faith, merits an additional sanction. *See Lieb,* 788 F.2d at 158; *Doering,* 857 F.2d at 197, fn. 6. If I were to limit myself to a review of the record before me, I would conclude that a written reprimand is warranted, in addition to an award of attorney's fees.

The Third Circuit, however, has recently stated that district court may consider certain mitigating factors, such as an attorney's ability to pay and the extent to which the attorney has suffered adverse press scrutiny from earlier sanctioning orders, before deciding what sanctions to apply. *Doering,* 857 F.2d at 197. Conversely, given the important function of Rule 11 sanctions as a deterrent against an attorney's misconduct in the future, 857 F.2d at 194–97, I conclude that consideration of public records which document an attorney's past brushes with Rule 11 is relevant in determining whether "only a reprimand," *cf. Doering* at 195, is "adequate[ ] [to] deter the undesirable behavior." *Id.* at 194; *cf. In re Disciplinary Action Curl,* 803 F.2d 1004, 1007 (9th Cir.1986).

Review of public court orders and opinions reveals that attorney Kramer, individually or jointly with his clients, has been sanctioned on numerous occasions for violations of the Federal Rules, including Rule 11. *See Rubin v. Buckman,* 727 F.2d 71, 72–73 (3d Cir.1984) (affirming district court finding by Fullam, J., that plaintiff's attorney, Steven Kramer, had committed "a flagrant violation" of Rule 11); *Flip Side Productions, Inc. v. JAM Productions, Ltd.,* 843 F.2d 1024 (7th Cir.1988) (affirming award of Rule 11 sanctions where attorney Kramer offered "no theory or evidence" in support of frivolous contract claim); *Schwartz v. Hospital of the University of Pennsylvania,* C.A. No. 88–4865, slip opinion, 1989 WL 64286, U.S. Dist. LEXIS 6645 (E.D.Pa., June 12, 1989) ("[t]his court concludes that plaintiffs' counsel, Mr. Kramer ... acted in bad faith") (J.M. Kelly, J.); *Seiffert v. Green,* C.A. No. 81–1956, slip opinion, 1987 WL 26670, U.S. Dist. LEXIS 11594 (E.D.Pa., Dec. 8, 1987) (sanctioning attorney Kramer under Fed.R.Civ.P. 37 for failure to comply with discovery requests and a court order); *Caplan v. Fairchild Publications Corp.,* C.A. No. 84–6039, slip opinion, 1986 WL 10782 [available on LEXIS] (E.D.Pa., Sept. 30, 1986) (dismissing complaint under Fed. R.Civ.P. 37 where plaintiff and his counsel, attorney Kramer, repeatedly failed to comply with court's discovery orders) (Lord, J.); *see also Kravinsky v. Wolk,* C.A. No. 86–4820, slip opinion, 1988 WL 84748, U.S. Dist. LEXIS 9134 (E.D.Pa., August 11, 1988) ("[Attorney Kramer's] failure to comply with orders and rules of this court would fully justify imposing sanctions") (VanArtsdalen, J.).

In light of this publicly documented history of attorney Kramer's repeated misconduct, I conclude that a monetary sanction and written reprimand alone would be insufficient to deter him from similar misconduct in the future. *Cf. Cannon v. Loyola University of Chicago,* 676 F.Supp. 823, 830 (N.D.Ill.1987). At the opposite extreme, although suspension from practice before the Eastern District of Pennsylvania might well be warranted, I am reluctant to

impose such a severe sanction without giving Mr. Kramer an additional opportunity to be heard. *See* Schwarzer, 104 F.R.D. at 204; *see also Snow Machines, Inc. v. Hedco, Inc.,* 838 F.2d 718, 725 (3d Cir.1988) (declining to decide what type of due process procedures are required before an attorney may be sanctioned under Rule 11). I will therefore order that, in addition to being reprimanded, attorney Kramer shall be referred to the Disciplinary Board of the Supreme Court of Pennsylvania for possible further disciplinary proceedings in accordance with the provisions of Rule 14 of the Local Rules of the United States District Court for the Eastern District of Pennsylvania. *Cf. Securities and Exchange Commission v. Suter,* 832 F.2d 988, 991 (7th Cir.1987) (referring attorney to disciplinary board where attorney's two and a half page brief, which cited only one irrelevant case, was frivolous and raised question as to attorney's ability to represent clients in a competent manner).[3]

3. In referring Mr. Kramer to the appropriate disciplinary committee under the authority of Fed.R.Civ.P. 11, I note that there appears to be probable cause to believe that Mr. Kramer's conduct in pursuit of this lawsuit may have also violated Rules 1.3 and 3.1 of the Rules of Professional Conduct, which took effect in the Commonwealth of Pennsylvania on April 1, 1988.

Rule 1.3 provides that "A lawyer shall act with reasonable diligence and promptness in representing a client." As the comment to this rule properly observes:

Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions; *in extreme circumstances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed.* (emphasis added).

In the instant case, Mr. Kramer—who had specifically asked the EEOC to send the right-to-sue letter directly to his own offices—has yet to offer a reasonable explanation for his failure to file his client's Title VII lawsuit within the statutorily-required 90–day period.

Rule 3.1, entitled "Meritorious Claims and Contentions," provides:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes good faith argument for an extension, modification or reversal of existing law.

As the official comment and code comparison accompanying the Rule make clear, Rule 3.1 of the Code, like Rule 11 of the Federal Rules of Civil Procedure, now applies an objective test to determine the frivolousness of an attorney's conduct. Thus, my finding that attorney Kramer has violated Rule 11 by pursuing frivolous claims suggests that he may have violated Rule 3.1 as well. *Cf. Cannon v. Loyola University of Chicago,* 676 F.Supp. 823, 830 (N.D.Ill.1987) (referring attorney to disciplinary board for possible violation of DR 7–102 of the Code of Professional Responsibility).

Rule 8.3 imposes an ethical duty on all members of the Pennsylvania Bar, including members of the judiciary, to report violations of the Rules of Professional Conduct which "raise[ ] a substantial question as to that lawyer's ... trustworthiness or fitness as a lawyer." Rule 8.3(a); *accord United States v. Gallagher,* 576 F.2d 1028, 1039 at fn. 8 (3d Cir.1978) ("When a district judge believes that a violation of the Code of Professional Responsibility may have occurred, he should, at a proper time, bring the matter to the attention of the appropriate disciplinary body."). As the Comment to the Rule warns:

Self-regulation of the legal profession requires that members of the profession initiate disciplinary investigation when they know of a violation of the Rules of Professional Conduct ... An apparently isolated violation may indicate a pattern of misconduct that only a disciplinary investigation can uncover.

Although the directive in Rule 8.3 may be honored primarily in the breach, Mr. Kramer's unexplained delay in filing his client's Title VII claim and his repeated failure to comply with filing deadlines set by this court—let alone the cases previously cited which have documented other examples of his disregard for court orders and the Federal Rules—persuades me that Mr. Kramer's conduct at bar may well be part of a larger pattern of misconduct. Hence, referral to the appropriate disciplinary board is warranted not only by Rule 11, but also by this Commonwealth's own Rules of Professional Conduct.

In addition, I note that proceedings before this court are governed by the Local Rules of Civil Procedure for the Eastern District of Pennsylvania. Rule 14, sub-rule V(A), provides:

When misconduct or allegations of misconduct which, if substantiated, would warrant discipline on the part of an attorney admitted to practice before this court shall come to the attention of this court, whether by complaint or otherwise ... the judge *shall* refer the matter ... for investigation and the prosecution of a formal disciplinary proceeding or the formulation of such other recommendation as may be appropriate. (emphasis added).

Sub-rule IV(B) defines "misconduct" as "any acts or omissions by an attorney admitted to practice before this court ... which violate the [rules of professional conduct] adopted by the Supreme Court of Pennsylvania." Attorney Kramer will therefore be referred to the Disciplinary Board of the Supreme Court of Pennsylvania, under the authority of Fed.R.Civ.P. 11

In referring Mr. Kramer to the Disciplinary Board, I recognize that the Third Circuit has expressed concern that Rule 11 proceedings have a tendency to "spawn satellite litigation counterproductive to efficient disposition of cases." *Doering,* 857 F.2d at 194. On the other hand, it has also stressed the importance of close scrutiny, and even additional hearings, before a district court may properly impose Rule 11 sanctions that go beyond mere fines or reprimands. *Cf. Gagliardi v. McWilliams,* 834 F.2d 81, 83 (3d Cir.1987) (requiring district court to carefully review pro se plaintiff's litigation history before it could impose Rule 11 sanction barring pro se plaintiff from filing future pro se lawsuits). Although the Third Circuit's desire for careful procedural safeguards is inevitably in some tension with its desire to avoid satellite Rule 11 litigation in the federal courts, referring attorneys who have repeatedly flouted the Rule to the Disciplinary Board, in accordance with local disciplinary rules, addresses both of the Third Circuit's concerns. *Cf. Eash v. Riggins Trucking Inc.,* 757 F.2d 557, 569 (3d Cir. 1985) (en banc) (discussing benefits of local disciplinary rules). First, referral to the disciplinary board can save the federal district courts from being forced to conduct time-consuming, investigative proceedings which are better handled in the strictly disciplinary context. Second, and more importantly, referral will also "ensure that the attorney has an adequate opportunity to explain the conduct deemed deficient," *Eash* at 571, and that truly severe deterrent sanctions will not be imposed except after a thorough investigation into the attorney's record.[4]

## 6. The Effect of the *Lingle* Rule on the Power of the District Courts to Impose Rule 11 Sanctions

█ I note, however, that in *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d at 100, the Third Circuit promulgated a supervisory rule requiring that all motions requesting Rule 11 sanctions be filed in the district court before the entry of a final judgment. Because the instant Rule 11 motion was filed after the entry of my order of dismissal, I must decide whether and to what extent the supervisory rule announced in *Lingle* affects my power as a district judge to impose the above sanctions.

In promulgating this supervisory rule, the Court of Appeals reasoned that if a party's conduct violates Rule 11,

> the adversary should be able to realize immediately that an offense has occurred. Seldom should it be necessary to wait for the district court or the court of appeals to rule on the merits of an underlying question of law. If there is doubt how the district court will rule on the challenged pleading or motion, the filing of the paper is unlikely to have violated Rule 11.... We will henceforth require prompt action by a litigant whenever a Rule violation appears. In that way, the district court will be able to decide the matter in a timely fashion so as to eliminate additional appeals.

847 F.2d at 99–100. The *Lingle* rule is thus designed to penalize parties who do not file prompt Rule 11 motions, and it clearly bars the award of attorneys' fees to the defendants at bar. In enacting the *Lingle* rule, however, I conclude that the Court of Appeals did not divest the district courts of the power to impose non-mone-

---

and Local Rule 14, for such further proceedings as may be deemed appropriate. *See also Ruth v. Crane,* 392 F.Supp. 724, 731–32 (E.D.Pa.1975) (Broderick, J.), *aff'd* 564 F.2d 90 (3d Cir.1977) (referring attorney to disciplinary board for professional misconduct); *United States v. Bowers,* 517 F.Supp. 666, 672 (W.D.Pa.1981) (same); *In re Direct Satellite Communications, Inc.,* 96 B.R. 507, 525 (Bkrtcy.E.D.Pa.1989) (same); *In re Tigue,* 82 B.R. 724, 732–34 (Bkrtcy.E.D.Pa. 1988) (same).

**4.** The procedure of referring attorneys who have committed serious or repeated violations of Rule 11 to the Disciplinary Board would also have the advantage of assuring that there is a properly appointed appellee to defend the imposition of severe sanctions in the event that such sanctions are ultimately recommended by the Board. *See Snow Machines, Inc. v. Hedco, Inc.,* 838 F.2d at 725 (Gibbons, C.J.) (discussing the procedural difficulties created by lack of an appellee when Rule 11 sanctions do not involve a monetary award to non-sanctioned party).

tary sanctions on attorneys who have committed a string of Rule 11 violations. *Cf. Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980) (federal courts have inherent power to impose sanctions where "counsel's conduct constitutes or was tantamount to bad faith"). Indeed, "[t]he detection and punishment of a violation of the signing requirement, encouraged by the amended rule, is part of the court's responsibility for securing the system's effective operation." Advisory Committee Notes on the 1983 Amendments to Rule 11. For me to immunize attorney Kramer's conduct from any Rule 11 sanction simply because the defendants did not file a timely motion would be for me to abdicate my responsibility as a district judge to uphold minimum standards of professional conduct in the federal courts. *Cf.* 1983 Amendments to Fed.R.Civ.P. 11 (when a court detects a Rule 11 violation, "the court, upon motion or upon its own initiative, *shall* impose ... an appropriate sanction") (emphasis added).

The Fifth Circuit has observed that under the amended Rule "there are no longer any 'free passes' for attorneys and litigants who violate Rule 11". *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 876 (5th Cir.1988) (holding that once a violation of the Rule is detected, imposition of an appropriate sanction is mandatory). I agree.[5] Defendants' motion for an award

of attorney's fees under Rule 11 will therefore be denied as violative of the *Lingle* rule; but the court, under its own authority under the Rule 11, shall reprimand Mr. Kramer for violating Rule 11 and shall refer the file in this case to the appropriate disciplinary board.[6]

## B.  28 U.S.C. § 1927

■ My denial of an award of attorneys' fees under Rule 11 does not end the inquiry, for defendants have also moved for an award of attorneys' fees under the federal cost statute, which provides:

> § 1927  Counsel's Liability for Excessive Costs
>
> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

In the leading Third Circuit case of *Ford v. Temple Hospital*, 790 F.2d 342 (3d Cir. 1986), a case which also involved the filing of a time-barred Title VII action, the Court of Appeals held that before attorney's fees may be imposed under § 1927, there must be a finding of willful bad faith on the part

---

**5.** Although the Third Circuit has not yet decided whether the 1983 Amendments to Rule 11 require the imposition of an appropriate sanction when a violation of the Rule is established, the unanimous consensus of the circuits which have considered the issue is that sanctions are now mandatory. *See Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1177 (D.C.Cir.1985); *Alvarado–Morales v. Digital Equipment Corp.*, 843 F.2d 613, 618 (1st Cir.1988); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 at n. 7 (2nd Cir.1985); *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir.1987); *Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1130 (5th Cir.1987); *INVST Financial Group v. Chem–Nuclear Systems*, 815 F.2d 391, 401 (6th Cir.1987); *Brown v. Federation of State Medical Boards of the United States*, 830 F.2d 1429, 1433 (7th Cir.1987); *O'Connell v. Champion International Corp.*, 812 F.2d 393, 395 (8th Cir.1987); *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1540 (9th Cir.1986); *Chevron, U.S.A., Inc. v. Hand*, 763 F.2d 1184, 1187 (10th Cir.1985);

*see also Reinhart v. Nixon*, C.A. No. 86–975, slip opinion, 1986 WL 10521 [available on LEXIS] (E.D.Pa. Sept. 19, 1986) (Fullam, C.J.) (1983 amendments to Rule 11 have made sanctions for violations mandatory).

**6.** Of course, the *Lingle* rule does not affect my power to refer Mr. Kramer to the disciplinary board on the basis of his possible violations of the Rules of Professional Conduct. *See Matter of Abrams*, 521 U.S. 1094, 1101 (3d Cir.1975), *cert. denied* 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (a district court has "unfettered power" to discipline members of its bar independently of and separately from the disciplinary procedures of the Court of Appeals); *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 160 (3d Cir.1984), *cert. denied* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718; *see also In re Snyder*, 472 U.S. 634, 644–45, 105 S.Ct. 2874, 2880–81, 86 L.Ed.2d 504 (1985) (federal courts have inherent power to discipline the attorneys who practice before them).

of the offending attorney. *Id.* at 347. The Third Circuit stressed, however, that even a finding of bad faith does not necessarily entitle a prevailing party to an award of all legal fees incurred in the course of the litigation; instead, it held that an offending attorney is liable only for costs incurred *after* the point at which the continuation of the lawsuit is determined to be in bad faith.

Applying this principle, in *Ford* the Third Circuit modified the district court's award of sanctions. Although it agreed that plaintiff's Title VII claim was time-barred, it held that "on the unique facts of this case" the filing of the action was not in bad faith because plaintiff's attorney was "not bound to assume that his potential adversaries would plead the defense or that by their conduct they might not in some way waive the defense." 790 F.2d at 349. Thus, the Court of Appeals ruled that plaintiff's counsel could not be held liable for costs incurred prior to the filing of defendant's motion for summary judgment, when defendant first gave notice of the facts substantiating his statute of limitations defense.

In a footnote, however, the Third Circuit noted:

> We are limiting our ruling to the facts of this case and we do not mean to imply that under different factual circumstances a court cannot grant counsel fee awards for services performed prior to the filing of a motion to dismiss or a motion for summary judgment.

*Ford,* 790 F.2d at 349, n. 9. In the case at bar, counsel for defendants took several steps to try to obtain a voluntary dismissal of this litigation without having to resort to a formal motion to dismiss. These steps included the phone calls and letters to attorney Kramer—notably the May 18, 1988, letter—which gave plaintiff's counsel actual notice of defendants' intention to raise the limitations defense. As I have already noted in my discussion of the Rule 11 issue, *supra,* I find that Kramer acted in bad faith by pursuing the Title VII claims after he had received defendant's May 18 letter. I conclude, therefore, that this case fits within the exception contemplated by footnote 10 in *Ford,* and that attorney Kramer is liable for costs and attorneys' fees incurred by defendants after May 23, 1988 (five days after defendants mailed their May 18 letter to Kramer), even though some of these expenses were incurred before the filing of the motion to dismiss. *Accord Campana v. Muir,* 786 F.2d 188 (3d Cir.1986), *affirming,* 615 F.Supp. 871 (M.D.Pa.1985) (awarding attorneys' fees and costs against plaintiff who pursued litigation against United States District Judge after plaintiff was given notice that defendant judge would raise defense of judicial immunity); *see also* "Liability under 28 USCS § 1927," 81 A.L.R.Fed. 36, 61–62 (1987) (collecting cases).[7]

I further find, in the exercise of my discretion, that an award of attorney's fees and costs is appropriate in this case, and that attorney Kramer has failed to meet his burden of proving that mitigating factors and circumstances should absolve him of liability for these expenses. *Cf. Ford v. Temple Hospital,* 790 F.2d at 347; *Baker Industries, Inc. v. Cerberus, Ltd.,* 764 F.2d 204, 210 (3d Cir.1985). Defendants' motion for an award of attorney's fees and costs under § 1927 will therefore be granted in the amount of $9,404.53.[8]

---

**7.** In the face of the May 18 letter, in which defendants also outlined the basis of their opposition to the Thirteenth Amendment claim, plaintiff's counsel had no excuse for pursuing this claim further unless he was prepared to make a good faith argument for the reversal of existing law. Thus I conclude that attorney Kramer's stubborn pursuit of the Thirteenth Amendment claim was in bad faith once he had received the May 18 letter; hence, this aspect of his litigational conduct is also subject to sanction under § 1927. *See, e.g., McCandless v. The Great Atlantic and Pacific Tea Co.,* 529 F.Supp. 476, 478 (N.D.Ill.1982), *aff'd,* 697 F.2d 198 (7th

Cir.1983) (affirming finding of bad faith under § 1927 where "lawsuit could have been avoided had [plaintiff's] counsel done the minimum amount of research required by a responsible member of the bar").

**8.** The basic standard to be used in determining the proper award of fees under § 1927 is the "lodestar" method. *Campana v. Muir,* 615 F.Supp. at 880. The lodestar fee is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the suit. At bar, defendants have submitted a request for an award of $10,932.28 accompanied

## C. CONCLUSION

As Judge Schwarzer has written,

Of all the duties of a judge, imposing sanctions on lawyers is perhaps the most unpleasant. A desire to avoid doing so is understandable. But if judges turn from Rule 11 and let it fall into disuse, the message to those inclined to abuse or misuse the litigation process will be clear. Misconduct, once tolerated, will breed more misconduct and those who seek relief against abuse will instead resort to it in self-defense.

Schwarzer, 104 F.R.D. at 205. Although sanctions are warranted only in exceptional circumstances, when such circumstances arise the imposition of carefully tailored sanctions is a necessary aspect of an integrated system created by the federal rules for the just, speedy and inexpensive determination of actions. *Id.* at 204. Regrettably, sanctionable misconduct has occurred in this case; therefore an appropriate order follows.[9]

### ORDER

AND NOW, this 17th day of August, 1989, upon consideration of the motion of defendants Darryl Freedman and McCormick, Taylor & Co., Inc. for an award of attorneys' fees against plaintiff Dorenda Matthews and her attorney, Steven M. Kramer, it is hereby ORDERED that the motion is GRANTED with respect to Steven M. Kramer and DENIED with respect to plaintiff Dorenda Matthews, and it is hereby ORDERED that Steven M. Kramer pay to defendants attorneys' fees and costs in the amount of $9,404.53. It is further ORDERED that Steven M. Kramer is hereby REPRIMANDED for violating Rule 11 of the Federal Rules of Civil Procedure. It is further ORDERED that, under the authority of Rule 11 and of Local Rule of Civil Procedure 14, and in accordance with the procedures established in Local Rule 14, the Clerk of Court is directed to send a copy of this order and the accompanying opinion to the Disciplinary Board of the Supreme Court of Pennsylvania for such further action, if any, as the Board may deem appropriate.

### APPENDIX A

### [PLAINTIFF'S] MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS THE COMPLAINT

PLAINTIFF'S CLAIM UNDER THE THIRTEENTH ADMENDMENT [sic] FOR RACIAL DISCRIMINATION AND SEXUAL DISCRIMINATION CANNOT BE DISMISSED

It has long been established that a victim of racial discrimination has a claim under the Thirteenth Amendment of the United States Constitution and that Title VII is not an exclusive remedy *Johnson vs Railway Express Agency, Inc.*, 421 U.S. 454, 459 [95 S.Ct. 1716, 1719, 44 L.Ed.2d 295] (1975):

Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggreieved [sic] individual clearly is not deprived of other remedies he possesses and is not liminted [sic] to Title VII in his search for relief. "[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes." *Alexander vs Gardner–Denver Co.*, 415 U.S. [36] at 48 [94 S.Ct. 1011, 1019, 39 L.Ed.2d 260 (1974)]. In particular, Congress noted "that the remedies available to the individual under Tital VII are co-extensive with the indiv[i]dual's right to sue under the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and that the two procedures augment each other and are

---

by supporting affidavits and a detailed "Summary of Fees and Expenses Incurred," and plaintiff has not challenged the reasonableness of any aspect of defendants' bill of costs. *Cf.* 615 F.Supp. at 881. In calculating the appropriate monetary award, however, I have reduced defendants' award by $1527.75—representing the costs and attorneys' fees incurred by defendants before May 23—to reach a final award figure of $9,404.53.

9. Because of my decision to award attorney's fees and costs under 28 U.S.C. § 1927, I need not and do not decide whether defendants would also be entitled to an award under 42 U.S.C. § 2000e–5(k).

not mutually exclusive." H.R.Rep. No. 92–238, p. 19 (1971), U.S.Code Cong. & Admin.News, 1972, pp. 2137, 2154.

Here, plaintiff has alleged that the discrimination was motivated in substantial part by race. Plaintiff alleges that the defendant Freedman had a "thing" for black women. He abused his position by preying upon black female employees. *Johnson supra* precludes dismissal.

Respectfully submitted,

/s/ Steven M. Kramer

STEVEN M. KRAMER, ESQUIRE
Steven M. Kramer & Associates
The Academy House, Suite 37P
1420 Locust Street
Philadelphia, PA 19102
(215) 545–3000

## APPENDIX B

### [PLAINTIFF'S] MEMORANDUM IN OPPOSITIO [sic] TO MOTION FOR COUNSEL FEES

The order entered by this Court was not one that could be predicted with certainty. Indeed, it is the subject of an appeal. The existence of a claim under the Thirteenth Amendment in the context of a combination of racial and sexual harassment is not at all free from doubt. The only case cited by this Court [*Sanders v. A.J. Canfield Co.*, 635 F.Supp. 85 (1986)] is a district court opinion from the Northern District of Illinois. It may well be that the Third Circuit, which has not passed upon the issue, may take a different view. Of course, the Third Circuit is not bound by the Chicago decision.

If attorneys are to be hit with counsel fees for pressing such a claim, then they will be chilled into not pursuing such claims. Novel claims will not be pressed.

In addition, on appeal, plaintiff shall present an equitable tolling argument, citing the pending state case. All of the

factors supporting equitable tolling are present here (lack of surprise, absence of loss of evidence or witnesses, etc.).

## CONCLUSION

For the foregoing reasons, the motion should be denied.[*]

RESPECTFULLY SUBMITTED,

/s/ Steven M. Kramer
[Steven M. Kramer]

DATED: 3/16/89

---

[*] Thus, should an attorney who is faced with district court decisions even in his own District not press a claim that runs counter to it, for fear of having to pay counsel fees? Here, the decision comes from another District.