CTC IMPORTS & EXPORTS

v.

NIGERIAN PETROLEUM CORPORA-
TION, Gulf Shipping Agency (Nigeria,
Ltd.), Universe Maritime Pireaus Casa
Marzelli, M/V VYTINA, Captain Stratis
Nicholas, Rice Unruh, Shelton Russell,
Individually and as Representative of
British Petroleum, British Petroleum,
and Addax Overseas, S.A.

Civ. A. No. 89–1815.

United States District Court,
E.D. Pennsylvania.

April 27, 1990.

L. Obioma Aham, Philadelphia, Pa., for plaintiff.

James W. Johnson, Mary Elisa Reeves, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, Chief Judge.

Presently before the court are the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56, and defendants' motion for sanctions pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. For the reasons set forth herein, plaintiff's motion for summary judgment will be denied, defendants' motion for summary judgment will be granted, and defendants' motion for sanctions will be granted.

## I. BACKGROUND

On February 16, 1989 Addax Overseas S.A., a Panamanian corporation, entered into a tanker voyage charter party with Palime Navigation Co. of Cyprus, owner of the M/V Vytina. Pursuant to voyage instructions by Addax, the Vytina was to proceed to Port of Bonny, Nigeria to load 105,000 metric tons of Bonny light crude oil to be carried to the United States. On February 20, the day the Vytina arrived in Nigeria, Addax contracted to sell 775,000 barrels of Bonny light crude to Sohio Supply Co. of Cleveland, Ohio. A February 28 amendment to the contract required delivery to Marcus Hook, Pennsylvania between March 14 and 16, with title passing to Sohio upon the Vytina's entrance into U.S. territorial waters. *See* Exhibit I to Motion for Summary Judgment of Defendant Addax Overseas S.A.

On February 24, 1989 the Vytina completed loading of 772,312 barrels of Bonny light crude. A Certificate of Origin dated February 24 shows that these 772,312 barrels were shipped by the Nigerian National Petroleum Corporation to Basic Resources Ltd. and were consigned to Banque Nationale de Paris. *See* Exhibit G. A Bill of Lading of the same date evidences a transfer of the crude from Basic Resources to the Vytina. *See* Exhibit F. The Vytina left port on February 24 with an estimated date of arrival at Marcus Hook of March 10.

On March 6, 1989 BP Oil Supply Company, Sohio's parent corporation, telexed Addax that it had received calls from parties representing CTC Imports & Exports claiming title and bills of lading for the oil aboard the Vytina and requested Addax to verify clear title. On March 7 Addax telexed its brokers, with a copy to Sohio, that the Vytina would lighter some 260,000 barrels at Big Stone Beach, Delaware on March 10. After lightering, the Vytina arrived at the BP oil refinery at Marcus Hook on March 13, where it was arrested by the plaintiff pursuant to Rule C of the Supplemental Admiralty and Maritime Rules. This arrest was vacated on March 15 by Judge Norma L. Shapiro acting as emergency judge.

Plaintiff's complaint alleges title to the oil aboard the Vytina through consignment by an entity known as Gulf Shipping Agency of Nigeria, Ltd. Plaintiff claims that its agent, John Indakwa, met with an individual named D.W. Fally who sold plaintiff 773,398 barrels of Bonny light crude from the Nigerian National Petroleum Corporation. In support of its claim, plaintiff proffers shipping documents, including a bill of lading, cargo manifest and Master's Receipt for Documents form, all executed on February 26, 1989; a date when the Vytina was in the Atlantic some seven hundred miles off the coast of Nigeria. *See* Exhibits A–E to Plaintiff's Complaint. In addition, both the master and the captain of the Vytina testified in deposition that the ship's seal and signatures on these documents were forgeries. Finally, Kuo Shiao–Lyn of the International Maritime Bureau of the International Chamber of Commerce informed plaintiff's shipping agent on March 10, 1989 that its documents were forged and offered assistance in an investigation. Based on this evidence, defendants seek dismissal of plaintiff's complaint and sanctions in the form of costs and attorneys fees.

## II. DISCUSSION

### A. Summary Judgment

The function of a motion for summary judgment is to avoid a useless trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d

Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). To this end, the court may examine the pleadings and other material offered for the purpose of determining if there is a genuine issue of material fact to be tried. *Sims v. Mack Truck Corp.*, 488 F.Supp. 592, 597 (E.D.Pa. 1980). Summary judgment "shall be rendered forthwith" if it appears from an application of substantive law to the uncontroverted facts that the movant is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.1987) (*en banc*); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 568 (3d Cir.1986). "As to materiality, the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Id.*

The burden to demonstrate absence of material fact issues remains with the moving party regardless of which party would have the burden of persuasion at trial. If, however, the non-movant will bear the burden of persuasion at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof. *Celotex, supra*, 477 U.S. at 327, 106 S.Ct. at 2554.

A party resisting a Rule 56 motion cannot expect to rely upon bare assertions, conclusory allegations, or a mere cataloguing of affirmative defenses. *Celotex, supra*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53; *Gans v. Mundy*, 762 F.2d 338 (3d Cir.

1985). Once the moving party has presented the evidence which would require a directed verdict at trial, the burden shifts to the opposing party to respond with specific facts showing that a genuine issue for trial exists. If the non-moving party does not so respond, summary judgment shall be entered against them. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10.

Given this standard, plaintiff's complaint must be dismissed on two grounds. As a threshold procedural matter, plaintiff's failed to verify its complaint as required by Rule C(2) of the Supplemental Admiralty and Maritime Rules. This is a jurisdictional defect which requires dismissal. However, plaintiff's complaint must also be dismissed on substantive grounds. Defendants' documentation, taken in conjunction with the deposition of Captain Stratis Nicholas, prove a conclusive chain of title to the cargo from the Nigerian National Petroleum Corporation through Basic Resources to Addax and, finally, to Sohio upon the Vytina's entrance into U.S. territorial waters. *See* Exhibits A–R to Defendant Addax's Motion for Summary Judgment and Exhibits 1–3 to Defendant Palime Navigation Co.'s Motion for Summary Judgment. Moreover, plaintiff's exhibits together with deposition testimony of Captain Nicholas and Mr. Shiao–Lyn establish that plaintiff's documents are indeed forgeries and cannot support its claim. Since no genuine issue of fact as to proper title to the Vytina's cargo remains, summary judgment must be granted in favor of defendant and against the plaintiff.

**B. Motion for Sanctions**

Defendants seek sanctions against plaintiff and its counsel for failure to conduct a reasonable inquiry into the authenticity of plaintiff's documents prior to filing the complaint and arresting the vessel, and for failure to withdraw the complaint following the deposition testimony of, among others, Captain Nicholas.

Federal Rule of Civil Procedure 11 provides:

Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation ... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The purpose of Rule 11's certification requirement is to discourage pleadings which are frivolous, legally unreasonable, or without factual foundation. *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 157 (3d Cir. 1986). The Third Circuit applies a test of "reasonableness under the circumstances" to determine whether an attorney has filed a pleading in violation of the rule. *Napier v. Thirty or More Unidentified Agents*, 855 F.2d 1080, 1090–91 (3d Cir.1988). This obligates the attorney to make a reasonable inquiry into the facts supporting the claim before signing the paper at issue. *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir.1986). The proper standard is objective reasonableness under the circumstances. *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir. 1985).

The court should consider four factors in determining the reasonableness of the attorney's pre-filing inquiry: (1) the amount of time available for conducting relevant factual and legal investigation; (2) the necessity for reliance on a client for underlying factual information; (3) whether the case was referred to the signer by another member of the bar; and (4) the plausibility of the legal position advocated. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95 (3d Cir.1988). In evaluating these factors, courts should avoid the wisdom of hindsight and test the signer's conduct by finding what was reasonable to believe at the time the pleading was submitted. *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3d Cir.1988). *See also Rule 11 in Transition: The Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11* (1989). However, if the court finds a violation of the rule, sanctions are mandatory. *See, e.g., Eastway Const., supra*, 762 F.2d at 254 n. 7; *Alvarado–Morales v. Digital Equipment Corp.*, 843 F.2d 613, 618 (1st Cir.1988); *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1177 (D.C.Cir.1985).

In this case the court finds that the pre-filing inquiry conducted by plaintiff's co-counsel, L.O. Aham, Esquire, and Simon Tache, Esquire, was woefully inadequate and that sanctions are required. First, the name of the master and the seal of the Vytina on plaintiff's bill of lading is plainly different from that of the actual master and ship's seal. Second, plaintiff's documents showed that the Vytina loaded the cargo of oil on February 25 and 26 and that the bill of lading was executed by the master on February 26. A simple reference to available maritime publications would have revealed that the Vytina left Nigeria on February 24 and was approximately 700 miles into the Atlantic at the time plaintiff's bill of lading was allegedly executed. Third, plaintiff failed to offer any documentation evidencing charter of the Vytina or financing for the purchase of oil with a market value in excess of $16 million. Fourth, as previously discussed, plaintiff was contacted by an investigator from the International Chamber of Commerce, International Maritime Bureau, prior to filing the complaint and arresting the vessel. The investigator informed plaintiff that its documents were forgeries and offered as-

sistance in an investigation. Peter Ludwig, a representative of plaintiff's shipping agent, International Marine Transport, thanked the ICC and stated that he too had doubts as to the validity of plaintiff's documents. *See* Deposition of Peter Ludwig, Exhibit 4 to Reply Memorandum of Defendant Sohio Supply Company.

Additionally, this was not plaintiff's first experience with forged shipping documents regarding cargo from Nigeria on consignment from the Gulf Shipping Agency. Indeed, plaintiff had laid claim to a cargo of Nigerian crude on board the M/T Barbro as recently as February 6, 1989. The cargo was, in fact, owned by Sohio Supply Company. Sohio's representative had a discussion with plaintiff's shipping agent, Wolfgang Behrens of International Marine Transport, who later acknowledged the "con game" and "scam" in Nigeria with respect to forged cargo documents. *See* Deposition of Wolfgang Behrens, Reply Memorandum, Exhibit 3. Moreover, D.L. McLure, president of Petro Vest, Incorporated, plaintiff's purchaser of the cargo aboard the Barbro, testified that he rescinded the transaction after an independent evaluation of plaintiff's documents concluded that they were forgeries. *See* Deposition of D.L. McLure, Reply Memorandum, Exhibit 1. This information clearly placed plaintiff on notice that it had no valid claim to the cargo on board the Vytina.

In his response to defendants' motion for sanctions, Mr. Tache alleges that he received a telephone call from "plaintiff" on Friday, March 10 at 11 p.m., although he does not identify which individual made the call. He further states that he received plaintiff's documents by fax on Saturday, March 11. Finding the documents sufficient on their face to establish title, Mr. Tache began preparing the necessary documents to arrest the Vytina on Monday, March 13, the day it arrived at Marcus Hook.[1] Mr. Tache argues that he did not have time to contact Nigerian authorities or perform any further investigation be-

cause it was the weekend and time was of the essence. However, Rule 11 clearly requires an attorney to do more than merely rely on a client's version of the facts before certifying that a claim is well-grounded in fact. As the Third Circuit stated in *Lieb*, *supra*, "[t]he rule imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen'." 788 F.2d at 157. Even the most cursory investigation would have revealed the circumstances described above and would have put plaintiff's counsel on notice of the fraud before encumbering a vessel carrying a $16 million cargo.

The complete irresponsibility of counsel's actions in this matter is compounded by the fact that the Vytina did not arrive at port until Monday, March 13 and would certainly be discharging cargo for at least one full day. This fact undermines counsel's argument that a proper investigation could not be conducted because time was of the essence. The result was a manifestly frivolous arrest of a $16 million cargo of oil which compels this court to sanction Mr. Tache as the signatory to both the complaint and documents arresting the Vytina. The court, therefore, sanctions Simon Tache, Esquire under Fed.R.Civ.P. 11 in the amount of defendants' costs, expenses and attorneys' fees.

■ The Supreme Court's decision in *Pavelic & LeFlore v. Marvel Entertainment Group*, — U.S. ——, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989) restricts the imposition of Rule 11 sanctions to the attorney actually signing the pleadings in dispute. Since Mr. Aham was not a signatory to the complaint or motion for arrest, he cannot be sanctioned under Rule 11. However, Mr. Aham entered his appearance on behalf of plaintiff on March 21, 1989, *after* the arrest of the Vytina had been vacated by Judge Shapiro. In addition, he appeared on behalf of plaintiff before this court at a hearing held on defendants' motion for summary judgment on March 31, 1989. Since Mr. Aham was not acting under the

---

1. Although Mr. Aham signed Plaintiff's Memorandum of Law in Response to Defendants' Mo-

tion for Sanctions, there is no discussion or defense of his role as attorney for plaintiff.

alleged time constraints impacting on Mr. Tache and since interim discovery made the frivolity of plaintiff's claim even more apparent, the court will sanction Mr. Aham in the amount of defendants' costs, expenses and attorneys' fees incurred after his entry of appearance on March 21, 1989 pursuant to 28 U.S.C. § 1927.

Section 1927 of Title 28 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Unlike Rule 11 which is concerned with the certification and merits of individual papers filed with the court, § 1927 represents a continuing obligation upon counsel to refrain from dilatory and abusive tactics and to avoid prolonging meritless claims. *Oliveri, supra,* 803 F.2d at 1273; *Matthews v. Freedman,* 128 F.R.D. 194, 206–07 (E.D. Pa.1989). In order for the court to impose an award of attorneys' fees under this section there must be a finding that the attorney acted in bad faith. *Ford v. Temple Hospital,* 790 F.2d 342, 347 (3d Cir.1986). This decision is vested within the discretion of the trial court. *Id.; Matthews, supra,* 128 F.R.D. at 207. In the exercise of its discretion, the court finds that Mr. Aham prolonged this frivolous suit by entering his appearance on behalf of plaintiff and joining in all papers filed after this appearance. Consequently, sanctions from this date forward are appropriate.

Finally, the most responsible actor in this entire affair was plaintiff itself. Representatives of plaintiff, most particularly Dr. Indakwa, knew that they had received forged ownership documents from Gulf Shipping before, that their purchasers considered their documents to be forged, that the International Chamber of Commerce considered their documents to be forged, and that the Vytina was 700 miles into the Atlantic on the date its cargo was supposedly loaded. Clearly Rule 11's deterrent function will best be served by sanctioning the party primarily responsible for burdening the defendants and the court with this frivolous litigation. Accordingly, plaintiff will likewise be assessed costs, expenses and attorneys' fees under Fed.R.Civ.P. 11.

By reason of the above findings, the liability of plaintiff and its attorneys will be joint and several.

### III. CONCLUSION

In conclusion, the court finds that no genuine issue of material fact as to proper title to the cargo aboard the M/S Vytina exists, or, for that matter, ever existed. Consequently, summary judgment shall be entered in favor of defendants. In addition, the court finds that the filing of this complaint and arrest of the Vytina violates the proscriptions of Fed.R.Civ.P. 11 entitling defendants to costs, expenses and attorneys' fees against plaintiff and its counsel Mr. Simon Tache. Finally, the court finds that Mr. Aham prolonged this frivolous litigation through his entry of appearance and representation of plaintiff as of March 21, 1989 and is likewise liable for costs, expenses and attorneys' fees from that date forward pursuant to 28 U.S.C. § 1927.

### ORDER

AND NOW, TO WIT, this 27th day of April, 1990, in consideration of the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56, and defendants' motion for sanctions pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927, it is hereby ORDERED that plaintiff's motion for summary judgment is *denied,* defendants' motion for summary judgment is *granted,* and defendants' motion for sanctions is *granted.* Liability for sanctions among plaintiff and its counsel shall be joint and several as set forth in the accompanying memorandum. Defendants are directed to submit to the court within thirty (30) days of this order an itemization of costs, expenses and attorneys' fees.