375

TOTAL TELEVISION
ENTERTAINMENT
CORP., Plaintiff,

v.

CHESTNUT HILL VILLAGE ASSOCI-
ATES, t/a Chestnut Hill Associates, a
partnership consisting of Chestnut Hill
Association, Ltd. and General Ameri-
can Equity, General Partners, et al.,
Defendants.

Civ. A. No. 92–2807.

United States District Court,
E.D. Pennsylvania.

Dec. 30, 1992.

Arthur Jackson, West Chester, PA, for plaintiff.

Albert C. Braslow, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for defendants.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

### INTRODUCTION

This lawsuit represents a second attempt by plaintiff Total Television Entertainment Corporation ("Total Television") to use the machinery of the federal courts to enforce a Court of Common Pleas judgment entered in its favor in February 1986. I dismissed plaintiff's initial complaint, filed under Civil Action Number 91–4285, pursuant to a motion to dismiss for lack of subject matter jurisdiction, concluding that plaintiff had failed to demonstrate a diversity of the parties under 28 U.S.C. § 1332. *See Total Television Entertainment Corp. v. Chestnut Hill Village Assoc., et al.*, No. 91–4285, 1992 WL 70395, 1992 U.S. Dist. LEXIS 3892 (E.D.Pa. Mar. 30, 1992).

In its second complaint, plaintiff alleges that the subject matter jurisdiction of this Court is predicated upon the existence of a federal question pursuant to 28 U.S.C. § 1331. Currently before me are the motions of defendant Chestnut Hill Associates Limited Partnership ("Chestnut Hill") to dismiss under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and for Rule 11 sanctions. Upon consideration of defen-

dant's motions, and the response of the plaintiff thereto, I shall grant both the motion to dismiss under Rule 12(b)(1) and the motion for sanctions.[1] I conclude that plaintiff's second complaint fails to state a cause of action "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and that Arthur Jackson, Esq. ("Jackson") of 8304 Bustleton Avenue, Philadelphia, PA, counsel for plaintiff, has violated Rule 11, because the legal theory relied upon for federal court jurisdiction in this complaint is not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11.

FACTUAL BACKGROUND

The facts alleged in plaintiff Total Television's most recent complaint mirror those in its first complaint. Consequently, what follows is my depiction of the allegations found in plaintiff's initial complaint from my prior opinion dismissing that complaint:

On July 8, 1983, plaintiff Total Television brought suit in the Court of Common Pleas, Philadelphia County, against the above-named defendants. Complaint at ¶ 1. Plaintiff claims that between 1984 and 1988, the defendants did not make any appearances, nor otherwise contest the state lawsuit, and that as a result, on February 16, 1988, a judgment was entered in favor of plaintiff Total Television against the defendants in the Court of Common Pleas. Complaint at ¶¶ 5–6. The judgment was for $36,399.50. *Id.* at ¶ 6.

On October 3, 1988, a Writ of Execution and garnishment were served on First Pennsylvania Bank ("First Pennsylvania") in Philadelphia to seize an account of the defendants towards satisfaction of the judgment. *Id.* at ¶ 8. First Pennsylvania refused to honor the judgment, however, because it asserted that the parties identified in the suit had ceased to exist, and that the property to be executed upon was under the management of a different entity, Chestnut Hill Village Associates ("Chestnut Hill Vil-

lage"), a Delaware limited partnership. *Id.* at ¶¶ 8, 10.

On January 17, 1990, it is alleged that a Praecipe for Writ of Execution was filed with the office of the Prothonotary to effect a Sheriff's sale of property owned by defendant Chestnut Hill Village. *Id.* at ¶ 9. This additional attempt at execution on the judgment was also defeated, because the defendants maintained that the property in question had been sold to defendant Chestnut Hill, which is also a Delaware entity. *Id.* at ¶¶ 9, 14.

Plaintiff claims that the transfers of property just described among the different partnerships were really nothing other than sham transactions intended to evade enforcement of its judgment in violation of the Pennsylvania Uniform Fraudulent Conveyance Act, which is codified at 39 Pa.Cons.Stat.Ann. § 357 (Purdon 1954 & Supp.1990). *Id.* at ¶¶ 12–15. It contends that besides the fraudulent intent behind the transfers, the entities were under common control, or were different in name only. *Id.* at ¶ 12.

*Total Television Entertainment Corp. v. Chestnut Hill Village Assoc., et al.,* No. 91–4285, 1992 WL 70395, at *1, 1992 U.S. Dist. LEXIS 3892, at *2–*3 (E.D.Pa. Mar. 30, 1992).

As in its first complaint, plaintiff asks this Court to set aside the conveyances of property the defendants purportedly engaged in so that it may satisfy its state court judgment, and to enter judgment for punitive damages and the attorney's fees allegedly incurred by plaintiff to date in attempting to execute upon its existing judgment. Complaint No. 92–2807 (the "Second Complaint"), Counts I and III. In addition, plaintiff also seeks punitive damages and attorney's fees for the defendants' alleged "wrongful taking" of property in which plaintiff, under its state court judgment, has legal title, and a judgment in the amount of $52,000 in order to prevent unjust enrichment of the defendants and to

---

1. Defendant Chestnut Hill has sought sanctions against both plaintiff and its counsel. As I explain in the Rule 11 portion of this opinion, I have decided to grant the motion for sanctions against plaintiff's counsel, but not against plaintiff. *See* Discussion at footnote 9 *infra.*

preserve plaintiff's rights in its existing judgment. Second Complaint, Count II.

## DISCUSSION

### The Motion of Defendant Chestnut Hill to Dismiss for Lack of Subject Matter Jurisdiction

As explained by plaintiff in its response to the motion to dismiss, federal question jurisdiction for the Second Complaint is predicated upon the theory that the defendants, by allegedly transferring property out of state to shield it from plaintiff's Court of Common Pleas judgment, deprived plaintiff of property without due process of law or just compensation, and that because plaintiff has purportedly exhausted its state court remedies without success, it may seek relief in federal court. Plaintiff Total Television's Memorandum in Opposition to Defendant Chestnut Hill's Motions to Dismiss and Impose Sanctions ("Plaintiff's Memo.") (Document No. 4) at pp. 2–5. Defendant Chestnut Hill contends that the Second Complaint must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. It argues that plaintiff's theory for federal question jurisdiction is clearly flawed, because plaintiff has not alleged, nor could it allege, any state action to support its due process claim, and because in the absence of a valid independent basis for federal court jurisdiction, one cannot seek redress in federal court simply based on the fact that he or she has been unsuccessful in state court. Memorandum of Law in Support of Chestnut Hill Associates Limited Partnership's Motion to Dismiss and Impose Sanctions ("Defendant's Memo.") (Document No. 3) at pp. 2–5. I will address the two (2) components of plaintiff's jurisdictional theory—violation of due process and exhaustion of state remedies—in turn.

### A. State Action

The Due Process Clause of the Fourteenth Amendment of the Constitution provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.[2] In 1883, the Supreme Court, examining the language of this amendment, declared that it prohibits only "State action of a particular character.... Individual invasion of individual rights is not the subject-matter of the amendment." *Civil Rights Cases*, 109 U.S. 3, 11, 3 S.Ct. 18, 21, 27 L.Ed. 835 (1883). The Court has reiterated this distinction between a governmental deprivation of the protections provided by the Due Process Clause and private conduct on many occasions. *See, e.g., Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S.Ct. 2777, 2784, 73 L.Ed.2d 534 (1982); *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157, 98 S.Ct. 1729, 1734, 56 L.Ed.2d 185 (1978); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 452, 42 L.Ed.2d 477 (1974).[3] The policy considerations underlying the requirement of state action before one can successfully claim a violation of most rights secured by the Constitution, such as the rights preserved in the Due Process Clause of the Fourteenth Amendment, were explained by the Court in *Lugar*:

> Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed. A major consequence is to re-

**2.** The language of the Due Process Clause of the Fourteenth Amendment does not literally incorporate the Fifth Amendment requirement of just compensation for a deprivation of property. The Supreme Court has, however, held that the Fourteenth Amendment incorporates the Fifth Amendment's guarantee of just compensation. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980).

**3.** The state action requirement was explained succinctly by the Court in *Flagg Bros.:* "While as a factual matter any person with sufficient physical power may deprive a person of his property, only a State or a private person whose action 'may be fairly treated as that of the State itself[ ]' ... may deprive him of 'an interest encompassed within the Fourteenth Amendment's protection'...." *Flagg Bros.*, 436 U.S. at 157, 98 S.Ct. at 1734 (citations omitted).

quire the courts to respect the limits of their own power as directed against state governments and private interests. Whether this is good or bad policy, it is a fundamental fact of our political order. *Lugar*, 457 U.S. at 936–37, 102 S.Ct. at 2753.

The decisions of the Supreme Court concerning the state-action principle generally require that conduct allegedly causing the deprivation of a constitutional right be "fairly attributable to the State." *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753. The question of "fair attribution" involves a two-pronged analysis. "First, the deprivation must be caused by the exercise of some right or privilege created by the State, or by a rule of conduct imposed by the state, or by a person for whom the State is responsible." *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753. Second, the party against whom the deprivation is charged must be a state actor. A state actor may be a state official, someone who has acted with or obtained significant aid from state officials, or a person whose conduct is "otherwise chargeable to the State." *Id.*[4]

A case closely related to the one at bar on the subject of state action is *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). In *Flagg Bros.*, respondents had sought to enjoin a warehousemen's sale of goods entrusted to him for storage, an act permitted by Section 7–210 of the New York Uniform Commercial Code. *Id.* at 151, 153, 98 S.Ct. at 1731, 1732. They alleged that Flagg Brothers had deprived them of their right under the Fourteenth Amendment to be free from a state deprivation of property without due process of law. *Id.* at 156, 98 S.Ct. at 1733. Respondents did not allege any official or state involvement in the proposed sale of their goods. *Id.* at 157, 98 S.Ct. at 1733.

The Supreme Court held that there was no state action, because it found that the State of New York was in no way responsible for Flagg Brothers' decision to sell respondents' belongings. *Id.* at 149–50, 98 S.Ct. at 1729–30. The Court rejected respondents' argument that the proposed sale by Flagg Brothers was attributable to the state because the state had authorized and encouraged the sale by enacting Section 7–210. *Id.* at 164, 98 S.Ct. at 1737. The Court noted that only when a state compelled an unconstitutional act by its law would there be state action. *Id.* Mere refusal to act by a state, through the state's legislative, executive, or judicial authority, does not, the Court explained, make the state responsible for the acts of private citizens. *Id.* at 165, 98 S.Ct. at 1738. With regard to the failure of a party to obtain judicial relief, a basis for state action asserted by plaintiff here, the Court stated as follows:

> If the mere denial of judicial relief is considered sufficient encouragement to make the State responsible for ... private acts, all private deprivations of property would be converted into public acts whenever the State, for whatever reason, denies relief sought by the putative property owner.

*Id.*

As in *Flagg Brothers*, plaintiff Total Television alleges no participation of any state official or office in defendants' alleged fraudulent transfer of property subject to its state court judgment. Instead, plaintiff, without further explanation, simply states that "the state courts have refused to act" to prevent the asserted deprivation of its property by the defen-

---

**4.** The Court has articulated several tests or factors to be examined in determining whether a private party may be considered a state actor. These tests include the "public function test," in situations where the government transfers to a private party a function traditionally administered exclusively by the government, *see, e.g., Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966), the "state compulsion test," where the state has by its law compelled a particular act, *see, e.g., Adickes v. S. H. Kress &* Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the "nexus test," applied in situations where there is a close connection between the State and the actions of a private party at issue, *see, e.g., Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), and the "joint participation test," where a private party acts together with the State in carrying out the alleged unconstitutional conduct, *see, e.g., Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

dants without just compensation. *See* Plaintiff's Memo. at pp. 2–4. Under *Flagg Brothers*, these allegations are clearly insufficient to support a finding of the requisite state action.

The one case discussing an unconstitutional deprivation of property cited by plaintiff, *Morrow v. South*, 540 F.Supp. 1104 (S.D.Ohio 1982), provides no support for such a claim based on the unlawful transfer of property alleged here. The violation of the Due Process Clause alleged in *Morrow* was based on allegations that a utility, the Dayton Power & Light Co., routinely disconnected the utility services of customers without a prior notice or a hearing. *Id.* at 1106–07. In concluding that this claim was not "insubstantial or frivolous" on its face, the court in *Morrow* cited the Supreme Court decision of *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), wherein homeowners had sued a utility which was a division of the city of Memphis, Tennessee and directed by a Board of Commissioners appointed by the Memphis city council. *Id.* at 3–4, 98 S.Ct. at 1557. Plaintiff here has not alleged that any state or municipal entity was in any way involved in the transfer of property forming the basis of plaintiff's constitutional claim. The factual setting in *Morrow* and *Memphis Light, Gas & Water*, a government operated and regulated utility directly involved in an alleged deprivation of property, is completely unrelated to the conduct here, entailing an alleged unlawful transfer of property by a private party.

### B. *Exhaustion of State Remedies*

■ As noted above, the second component of plaintiff's theory of federal question jurisdiction is that it has exhausted all state remedies available to it without success, and thus may proceed to federal court to protect its constitutional rights. Plaintiff's Memo. at pp. 4–5. The sole case cited by plaintiff, however, *Cooper v. Marsh*, 807 F.2d 988 (Fed.Cir.1986), provides no support for this jurisdictional theory. In *Cooper*, a former Army captain was tried by a court-martial on charges of conduct unbecoming an officer and fraternization.

*Id.* at 989. Prior to trial, Cooper, the former captain, moved to dismiss the fraternization charge on the grounds that it violated his rights under the First and Fifth Amendments of the Constitution. *Id.* The motions were denied, and Cooper was convicted of both charges. *Id.*

Prior to his discharge from the Army, Cooper filed a lawsuit in federal district court, alleging the foregoing constitutional claims. *Id.* On appeal, the Court of Appeals for the Federal Circuit reiterated the general rule that before a defendant could collaterally attack a court-martial conviction in the civilian courts, he must have exhausted all remedies available to him in the military. *Id.* at 990. The court went on to hold that this exhaustion requirement has been fulfilled as to constitutional claims when one has attempted to obtain review of those claims by every military tribunal empowered to remedy them. *Id.* at 992.

Of significance to the analysis at hand was the fact that federal court jurisdiction in the *Cooper* case was based in part on the Tucker Act, 28 U.S.C. § 1346, which gives the district courts and the United States Claims Court original jurisdiction of any civil action or claim against the United States, not exceeding $10,000, founded upon the Constitution, an Act of Congress, or any regulation of an executive department. *Cooper*, 807 F.2d at 991. Thus, in *Cooper*, a specific statute granted federal court jurisdiction to defendants seeking relief from a court-martial conviction after they had exhausted their remedies in military tribunals. The absence of such a statute here renders the *Cooper* decision totally inapposite to this case.

Other statutes may be found which grant federal court jurisdiction upon one's exhaustion of his or her remedies in other tribunals, but, as in *Cooper*, only in very specific contexts. *See, e.g., Hankins v. Fulcomer*, 941 F.2d 246, 249 (3d Cir.1991) (federal courts empowered to grant *habeas corpus* relief to a state prisoner under 28 U.S.C. § 2254 when available state remedies exhausted); *Helton v. Fauver*, 930 F.2d 1040, 1044 (3d Cir.1991) (same); *Ran-*

*dolph–Sheppard Vendors of America v. Weinberger,* 795 F.2d 90, 93–94, 104 (D.C.Cir.1986) (federal court jurisdiction available for alleged violations of the Randolph–Shepard Act, enacted to provide employment opportunities on federal property to blind vendors, after exhaustion of administrative dispute resolution system established under this Act).

Plaintiff has not cited any statute providing federal question jurisdiction in the situation at hand, where a party has allegedly been deprived of property by a private entity through a purported fraudulent conveyance and has been unable to obtain relief in state court. My own research has revealed no such statute. As counsel for defendant Chestnut Hill argues, it is hard to believe that this Court has federal question jurisdiction in this setting, because then every party with an unsatisfied state court judgment who alleges a fraudulent conveyance and exhaustion of state court remedies would automatically have access to the federal courts to attempt to enforce the judgment. Defendant's Memo. at p. 5.[5]

\* \* \*

In sum, I conclude that plaintiff has failed to state a basis for federal court jurisdiction pursuant to 28 U.S.C. § 1331 under its theory that defendants have deprived it of property without just compensation, and that it has exhausted all of its state court remedies. I will, therefore, grant the Rule 12(b)(1) motion of defendant Chestnut Hill to dismiss the complaint for lack of subject matter jurisdiction.

*Defendant Chestnut Hill's Motion for Rule 11 Sanctions*

Defendant Chestnut Hill has also moved for Rule 11 sanctions. It argues that Jackson, plaintiff's counsel, inadequately researched the basis of federal court jurisdiction he asserts, because "[a]ny normally competent level of legal research would

have disclosed that there is no federal question jurisdiction in the federal courts based merely upon an alleged violation of a state statute by a private actor and unsuccessful attempts to collect a state court judgment." Defendant's Memo. at p. 6. In response, attorney Jackson states that he put a great deal of effort into reviewing the facts and existing law, and that the Second Complaint is "grounded in a principle of constitutional law that is well recognized within the courts of this land." Plaintiff's Memo. at p. 6.

My inquiry under Rule 11 is twofold. It entails an examination of whether there has indeed been a violation of Rule 11, and, if so, a determination of what constitutes the appropriate sanction.

*A. The Existence of a Rule 11 Violation*

 Rule 11 states, in pertinent part, that

[e]very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... *The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it* is well grounded in fact *and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law,* and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose

---

**5.** Notwithstanding plaintiff's statements to the contrary, it is far from clear based on the record now before me that plaintiff has exhausted all available state court avenues for relief in connection with defendants' alleged unlawful transfer to the State of Delaware of property subject to plaintiff's Pennsylvania Court of Common Pleas judgment. There is no indication,

for instance, that plaintiff attempted to prosecute an action in the Pennsylvania courts under the Uniform Fraudulent Conveyance Act, 39 Pa. Cons.Stat.Ann. §§ 351–63, or that it tried to enforce its Pennsylvania judgment in Delaware under the latter state's Uniform Enforcement of Foreign Judgments Act, 10 Del.C.Ann. §§ 4781–87.

upon the person who signed it, a represented party, or both, an appropriate sanction, which *may* include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

(Emphasis supplied.) Rule 11 contains two grounds for sanctions. The first ground is known as the "frivolousness clause," and is comprised of two subparts, *viz.,* whether the party or attorney made a reasonable inquiry into the facts, and whether the party or attorney made a reasonable inquiry into the law. *Brown v. Federation of State Medical Boards of the United States,* 830 F.2d 1429, 1435 (7th Cir.1987) (citing *Thomas v. Capital Security Services, Inc.,* 812 F.2d 984, 988 (5th Cir.1987) (en banc)). A breach of either component of the frivolousness clause gives rise to a violation of Rule 11. *Id.* (citing *Thomas,* 812 F.2d at 989).[6]

■ In 1983, Rule 11 was amended to incorporate an objective standard to determine whether a filing is well grounded in fact and law. *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 482 (3d Cir.1987). The test is now one of reasonableness under the circumstances. *Id.* Under the current rule, "[t]he signature of counsel on a pleading[, motion, or other paper] certifies that a reasonable investigation of the facts and a normally competent level of legal research support the presentation." *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 157 (3d Cir.1986). " 'Subjective good faith no longer provides the safe harbor it once did.' " *Id.* (quoting *Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985)). *See also Gaiardo,* 835 F.2d at 482 ("[T]he Rule does not permit the use of the 'pure heart and empty head' defense.") (quoting Schwarzer, *Sanctions Under The New Rule 11—A Closer Look,* 104 F.R.D. 181, 187 (1985)). "The Rule imposes an obligation on counsel and client analogous to the railroad crossing sign, 'Stop, Look

and Listen.' It may be rephrased, 'Stop, Think, Investigate and Research' before filing papers either to initiate a suit or to conduct the litigation." *Id.*

Relying upon the Advisory Committee Note to Rule 11, the Court of Appeals for the Third Circuit has set forth four (4) factors for a court to examine in determining the reasonableness of an attorney's pre-filing inquiry:

1) the amount of time available to the signer for conducting the factual and legal investigation;

2) the necessity for reliance on a client for the underlying factual information;

3) the plausibility of the legal position advocated; and

4) whether the case was referred to the signer by another member of the Bar.

*Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 95 (3d Cir.1988) (citing Fed. R.Civ.P. 11 advisory committee note). In addition, relying upon case law, the court of appeals has also suggested a fifth factor: the complexity of the legal and factual issues implicated. *Id.* (citing *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 875 (5th Cir.1988) (en banc)). In reviewing a filed paper to determine the reasonableness of an attorney's pre-filing inquiry, both the advisory committee's note and the court of appeals have cautioned that "[t]he wisdom of hindsight should be avoided; the attorney's conduct must be judged by 'what was reasonable to believe at the time the pleading, motion, or other paper was submitted.' " *Id.* at 94 (quoting Fed.R.Civ.P. 11 advisory committee note; *Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535, 540 (3d Cir.1985)). I will proceed to examine the foregoing factors *seriatim.*

*1) The Amount of Time Available to the Signer*

Attorney Jackson has presented no evidence suggesting that he was pressured by any time constraints in filing the Second

---

**6.** The second ground for sanctions under Rule 11 is known as the "improper purpose clause," because the rule provides that a motion, pleading, or other paper shall not be filed to harass or to cause unnecessary delay or increase in the cost of litigation. *Brown,* 830 F.2d at 1436 (citing *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986)).

Complaint. Nevertheless, my prior opinion dismissing plaintiff's initial complaint was issued on March 30, 1992. Jackson did not file the Second Complaint until May 14, 1992. Thus, he had a month-and-a-half to research, prepare, and file the Second Complaint, which, given the nature of plaintiff's case, I find was an ample period of time.

### 2) Reliance on the Client for Factual Information

Because the focus of the instant Rule 11 motion is on the reasonableness of attorney Jackson's legal inquiry, I find that this consideration is not pertinent here.

### 3) Referral of the Case to the Signer by Another Member of the Bar

There is no evidence before me that this case was referred to Jackson by another member of the Bar. Thus, as with the preceding factor, I find that this consideration is not material to the current analysis.[7]

### 4) Plausibility of the Legal Position Advocated

The plausibility of plaintiff's legal position is a prime consideration here. A relatively recent case focusing on the reasonableness of an attorney's legal theories is *Matthews v. Freedman*, 128 F.R.D. 194 (E.D.Pa.1989), *aff'd*, 919 F.2d 135 (3d Cir. 1990). In *Matthews*, Judge Gawthrop set forth various factors he found particularly useful in determining the reasonableness of several theories propounded by an attorney in support of a claim under the Thirteenth Amendment of the Constitution. As Judge Gawthrop explained, a legal argument may be classified as "clearly unreasonable" (as opposed to "presumptively unreasonable") when it bears a "fatal, irremediable defect" on the face of the pleading, motion, or other paper, when "settled law opposes [the] argument and counsel does not confront or attempt to distinguish adverse authority," or when the "argument consists of dubious legal propositions unsupported by legal research." *Id.* at 200

(citing E.D. Cavanaugh, *Developing Standards under Amended Rule 11 of the Federal Rules of Civil Procedure*, 14 Hofstra L.Rev. 499, 538, 544–45 (1986)). Such legal arguments are "conclusively sanctionable under Rule 11 absent a 'clear and convincing' justification for the pleader's conduct." *Id.* (citation omitted).

I find the considerations relied upon by Judge Gawthrop in the *Matthews* case to be helpful. Application of these considerations to the theories relied upon by attorney Jackson for federal court jurisdiction leads me to find that these theories transgress the requirements of Rule 11.

■ As discussed in connection with my analysis of defendant Chestnut Hill's motion to dismiss, settled law, which attorney Jackson has not attempted to distinguish, clearly opposes plaintiff's claim of a Due Process Clause violation. Plaintiff alleges no involvement of any state official or office in defendants' alleged unlawful transfer of property. Instead, plaintiff merely contends that there is present the requisite state action for its constitutional claim, because the state courts have somehow "refused to act" to prevent the purported deprivation of plaintiff's property by the defendants.

Although as a general proposition, courts determine whether or not state action is present on a case-by-case basis, *see, e.g., Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982), basic legal research should have revealed to Jackson that the allegations supporting his constitutional claim lacked state action and were thus fundamentally flawed. As I have discussed, on at least one occasion, the Supreme Court has explicitly stated that mere inaction by the state, whether through its legislative, executive, or judicial departments, does not constitute state action, and that state involvement in connection with an asserted unconstitutional act must be alleged. *See Flagg*

---

7. Even if this case had been a referral, I find it hard to envision how this would impact upon the ability of counsel to perform adequate legal research.

*Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

■ I find plaintiff's argument that its exhaustion of state remedies supports federal court jurisdiction to be violative of Rule 11 as well. As mentioned above in my discussion of the motion to dismiss, plaintiff asserts that it has exhausted all state remedies available to it without success, and that, accordingly, it may automatically proceed to federal court to vindicate its constitutional rights. I found this proposition to be thoroughly unsupported by legal research. Like the discussion of his constitutional claim, Jackson cited one case in support of his exhaustion theory, which, upon examination, proved to be completely inapposite to the case at bar.

Mindful of the potential of Rule 11 to chill creative lawyering, I find that the jurisdictional theories relied upon by Jackson in no way represent "a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11. As the court in *Matthews* stated in discussing the "good faith argument" standard, "there will invariably be room for some disagreement concerning the precise degree to which an argument is plausible or outrageous," but where an attorney ignores an "unbroken line of contrary authority," fails to offer "even farflung analogies," cites only a single wholly inapposite case in support of his argument, and files only short, conclusory briefs, that attorney is "engaged in empty posturing, not good

faith argument." *Matthews*, 128 F.R.D. at 201 (citations omitted).

An example of legitimate creative advocacy may be found in the *Gaiardo* decision. There, the court of appeals concluded that plaintiff-employee's wrongful discharge claim did not violate Rule 11, given the "continuing effort to modify and liberalize the law in favor of the employees," and the existence of at least two supportive opinions: a "strong dissenting opinion" in a Pennsylvania Supreme Court case, and a Pennsylvania Superior Court decision issued just four (4) days before plaintiff filed suit. *Gaiardo*, 835 F.2d at 485.

\* \* \*

In sum, I conclude that attorney Jackson has violated Rule 11, because the Second Complaint, which bears his signature, is founded upon jurisdictional theories that are not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." [8]

### B. The Appropriate Sanction

■ Once a violation of Rule 11 has been found, sanctions are mandatory. *Langer v. Monarch Life Insur. Co.*, 966 F.2d 786, 810–11 (3d Cir.1992) (citing *Lieb v. Topstone Industries*, 788 F.2d 151, 157 (3d Cir.1986)). Defendant Chestnut Hill seeks reimbursement of the legal fees and expenses it incurred as a result of the Rule 11 violation.[9] Defendant's Memo. at p. 6. Such a sanction is not, however, automatically required. " 'Rule 11 is not a fee-shifting statute.... A movant under Rule

---

**8.** In reaching this conclusion, I have not overlooked the fifth factor set forth in the Court of Appeal's *Lingle* decision, namely, the complexity of the legal and factual issues implicated. It should now be self-evident that the legal issues present here, state action and jurisdiction based upon an exhaustion of state remedies, are straightforward and fundamental. I find, therefore, that this final consideration does not detract from my determination that attorney Jackson has violated Rule 11.

**9.** Defendant Chestnut Hill seeks sanctions against both plaintiff and attorney Jackson. *See* Defendant's Memo. at p. 6. Although the advisory committee note to Rule 11 makes it clear that a court may "impose sanctions on either the attorney, the party the signing attorney represents, or both," there is absolutely no sugges-

tion in the record before me that any representative of plaintiff Total Television assisted in any fashion in the formulation or use of the legal theories I have concluded violate Rule 11. Even if there was evidence of such assistance, I would hesitate to sanction plaintiff in view of the paramount responsibility of a lawyer to conduct an adequate legal inquiry before filing a complaint, motion, or other paper with a court. *See* Stephen B. Burbank, *Rule 11 in Transition: The Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11* at 40–41 (1989) (favoring presumption of sanctions against the lawyer, not the client, given, *inter alia,* the lawyer's paramount responsibility for an adequate legal inquiry). Accordingly, I shall impose a sanction only against attorney Jackson, but not against plaintiff.

11 has no entitlement to fees or any other sanction.' " *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, ——, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 407, 110 S.Ct. 2447, 2462, 110 L.Ed.2d 359 (1990)). As the court of appeals recently stated, "[a]lthough sanctions may properly include an award of counsel fees and expenses to the adversary, the prime goal should be deterrence of repetition of improper conduct, and an award of counsel fees or other monetary sanction should not automatically be the sanction of choice." *Waltz v. County of Lycoming*, 974 F.2d 387, 390 (3d Cir.1992).

■ An appropriate sanction is one that constitutes " 'the *minimum* that will serve to *adequately* deter the undesirable behavior.' " *Doering v. Union County Board of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir.1988) (citations omitted). Appropriate sanctions other than a monetary award may include reference to a bar association grievance committee, compulsory legal education, an oral or written reprimand, an order barring the attorney from appearing for a period of time, or even ordering the attorney who violated the rule to circulate in his or her firm a copy of the opinion in which the pleadings, motion, or other paper were criticized. *See, e.g., Langer*, 966 F.2d at 811; *Doering*, 857 F.2d at 194; *Matthews*, 128 F.R.D. at 202–03.

■ The courts have suggested a number of factors that may be considered in determining what the appropriate sanction should be for a particular Rule 11 violation. These factors include the willfulness of the violation, the attorney's history of filing frivolous actions, or alternatively, his or her good reputation, and the degree of frivolousness involved, recognizing that cases lie along a continuum, and do not always fall neatly into the frivolous or non-frivolous category. *See Doering*, 857 F.2d at 197 n. 6; *Gaiardo*, 835 F.2d at 482; *Matthews*, 128 F.R.D. at 203.

I find no indication in the record now before me that attorney Jackson's violation of Rule 11 was in any way willful. Rather, this violation appears only to be the result of incomplete or negligent legal research. In addition, my own research of publicly reported decisions reveals no prior findings of Rule 11 violations against Jackson.

My research did, however, reveal judicial statements suggesting that Jackson's reputation for legal research is weak. On this point, I rely first on my prior decision dismissing plaintiff's first complaint. *See Total Television Entertainment Corp. v. Chestnut Hill Village Assoc., et al.*, No. 91–4285, 1992 WL 70395, 1992 U.S. Dist. LEXIS 3892 (E.D.Pa. Mar. 30, 1992). There, I found that plaintiff had failed to negate the possibility that defendant Chestnut Hill, a limited partnership, had members who were citizens of Pennsylvania, and consequently, concluded that plaintiff could not invoke the diversity jurisdiction of this Court. *Id.* 1992 WL 70395, at *4, 1992 U.S. Dist. LEXIS 3892, at *9–*12.

My research has also revealed that despite the fact that Jackson was admitted as an attorney in Pennsylvania in 1989, and has only been a member of the Bar of the Eastern District of Pennsylvania since 1990, he is currently serving, or has served, as attorney of record in at least eleven (11) cases in this district. The first of these cases was filed in February 1991. The frequency with which Jackson has appeared as counsel in this district, a frequency I assume will continue, reinforces the need for him immediately to take steps to rectify the poor legal research ability he has demonstrated in this case, the prior case he filed on behalf of plaintiff, and, as I will now discuss, several other cases as well.[10]

In *Core v. The Frankford Hospital*, No. 92–3137 (E.D.Pa. filed June 1, 1992), a case in which the plaintiffs were represented by attorney Jackson, Judge Yohn granted a motion to dismiss for failure to state a claim. *See Core v. The Frankford Hospital*, No. 92–3137, 1992 WL 252761, 1992

---

**10.** I plan to assist attorney Jackson in deciding upon the steps he must take to correct his deficient legal research skills. *See* the "Remedial Steps" discussion at page 386 *infra*.

U.S. Dist. LEXIS 15035 (E.D.Pa. Sept. 25, 1992). A review of Judge Yohn's opinion discloses that Jackson failed to heed fundamental legal principles. Thus, in addressing plaintiffs' claims in *Core seriatim,* Judge Yohn concluded that (1) plaintiffs could not maintain their claim under 42 U.S.C. § 1983, because, as in this case, the complaint failed to allege state action, *id.* 1992 WL 252761 at \*2, 1992 U.S. Dist. LEXIS 15035 at \*3–\*5, that (2) their claim under 42 U.S.C. § 1985(2) was faulty, because the complaint did not allege the existence of a conspiracy, an essential element of a Section 1985(2) claim, *id.* 1992 WL 252761 at \* 2, 1992 U.S. Dist. LEXIS 15035 at \*5–\*6, and that (3) plaintiffs could not sustain their claim under the RICO statute, 18 U.S.C. §§ 1962, 1964, because, as the Court of Appeals for the Third Circuit had recently made clear, an action for personal injuries could not be maintained under RICO. *Id.* 1992 WL 252761 at \*2, 1992 U.S. Dist. LEXIS 15035 at \*7–\*8.

Further, in *Opthof v. Ashland Chemical, Inc.,* No. 92–3136 (E.D.Pa. filed June 1, 1992), a case in which attorney Jackson again served as plaintiff's counsel, Judge Troutman dismissed the complaint after finding that plaintiff had failed properly to allege the citizenship of the defendant corporation. *See* Order issued August 5, 1992 (Document No. 5). And in *Moy v. Ashland Chemical, Inc.,* No. 92–03825 (E.D.Pa. filed July 1, 1992), where Jackson again represented the plaintiff, Judge Troutman denied plaintiff's motion for a temporary restraining order, finding that plaintiff had "failed to adduce probative evidence of his entitlement to the relief requested," and that it did "not appear from the record that the adverse parties or their attorneys received adequate notice of the motion." *See* Order issued July 30, 1992 (Document No. 6).

Neither my prior opinion involving plaintiff Total Television, the instant case, nor any of the additional cases I have just examined, indicate that attorney Jackson has engaged in additional Rule 11 violations. These cases do, however, tend to evince a generally weak reputation on the part of Jackson for adequate legal research.

As mentioned above, an additional factor which courts may consider in settling upon an appropriate Rule 11 sanction is the degree of frivolousness involved in a particular case. *See Doering,* 857 F.2d at 197 n. 6. I find that the degree of frivolousness involved here is high. Although I have found that there is no evidence in this case that attorney Jackson has willfully offered frivolous legal theories, a high degree of frivolousness here is nonetheless confirmed by the patent misapplication of the cases he relies upon, the total lack of authority for the jurisdictional theories asserted, and the existence of considerable contrary case law.

\* \* \*

Based upon the foregoing analysis, I conclude that a written admonishment is the appropriate Rule 11 sanction in this case. Despite my finding that attorney Jackson has developed a generally weak reputation for legal research, and that the jurisdictional theories he relies upon here bear a high degree of frivolousness, his relatively recent admission to the bar, the absence of any evidence of willfulness in connection with the conduct in question, and the fact that he does not appear to have been found in violation of Rule 11 before, militate against any stronger sanction. In short, the sting of this opinion should be punishment enough. Accordingly, I find that the sanction sought by defendant Chestnut Hill, the reimbursement of legal fees and expenses, is not warranted.

### C. Remedial Steps

The practice of law remains among the highest callings in our society. I encourage attorney Jackson to continue plying his noble trade in this court and elsewhere, but only if he immediately embarks upon a course to correct the deficient legal research skills he has exhibited in this case and others. I believe I must assist Jackson in deciding upon the remedial steps required to be undertaken. In this regard, attorney Jackson shall contact my chambers no later than Friday, January 15, 1992

with dates and times during which he is available for an *in camera* meeting to determine what corrective steps will best enable him to provide this court and others with adequate legal research in the future. This meeting will in no way impact upon the merits of this case. Consequently, counsel for defendant Chestnut Hill is not required to attend.

CONCLUSION

For the foregoing reasons, I shall grant the motions of defendant Chestnut Hill to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and for Rule 11 sanctions. Accordingly, this lawsuit shall be dismissed.

An appropriate order follows.

ORDER

AND NOW, this 30th day of December 1992, upon consideration of the motions of defendant Chestnut Hill Associates Limited Partnership ("Chestnut Hill") to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and for Rule 11 sanctions (Document No. 3), and the response of the plaintiff thereto, and for the reasons stated in the attached memorandum, it is hereby ORDERED that (1) the motions of defendant Chestnut Hill are GRANTED, and that the above-captioned lawsuit is hereby DISMISSED for want of federal court jurisdiction, and (2) that Arthur Jackson, Esq. ("Jackson") of 8304 Bustleton Avenue, Philadelphia, PA is found to have violated Rule 11 by reason of his signing the complaint herein, which is founded upon jurisdictional theories that are not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Accordingly, attorney Jackson is hereby REPRIMANDED.

IT IS FURTHER ORDERED that attorney Jackson shall contact my chambers no later than Friday, January 15, 1992 with dates and times during which he is available for an *in camera* meeting to decide upon the remedial steps he shall undertake in connection with my conclusion that he has violated Rule 11. This meeting will in no way impact upon the merits of this case.

Consequently, counsel for defendant Chestnut Hill is not required to attend.